Frederick A. R. DREW, Petitioner,

v.

**U. S. DEPARTMENT OF THE NAVY and Merit Systems Protection Board, Respondents.**

No. 80–2352.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 28, 1981.

Decided March 5, 1982.

Stuart A. Kirsch, Washington, D. C., with whom James R. Rosa, Washington, D. C., was on brief for petitioner.

Michael J. Ryan, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., Washington, D. C., at the time brief was filed, Royce C. Lamberth and Kenneth M. Raisler, Asst. U. S. Attys., Washington, D. C., were on brief for respondents.

Before MacKINNON, WALD and MIKVA, Circuit Judges.

Opinion for the court PER CURIAM.

Opinion dissenting filed by Circuit Judge MIKVA.

PER CURIAM:

Petitioner Drew, a Medical Records Technician with the Department of the Navy in San Diego, California, was dismissed from his post for performing "unacceptably" as defined in 5 U.S.C. § 4303 (Supp. II 1978). On review, the Merit Systems Protection Board ("Board") affirmed that dismissal. Subsequently, in a case with similar facts, the Board invalidated the procedure earlier followed in dismissing petitioner. The Navy, acknowledging that Drew's dismissal could not stand, requested reconsideration (J.A. 376) of petitioner's dismissal under a second statute, 5 U.S.C. Chapter 75, which authorized removal of employees "to promote the efficiency of the Service." The reconsideration resulted again in petitioner's dismissal, the Board affirmed and petitioner appealed. We affirm the Board's decision.

### I.

On June 7, 1979, petitioner was notified by his supervising officer of an impending recommendation to the Chief of Naval Patient Services that he (petitioner) be dismissed for failure to perform two critical elements of his job.[1] Petitioner responded by alleging that the proposed dismissal action was in direct retaliation for his union activities. On July 9, 1979, the Chief of Patient Services ordered the dismissal.

On July 20, 1979 petitioner's representative, the National Representative of the American Federation of Government Employees (J.A. 5, 227), filed an appeal to the Board, which reviewed the dismissal under the standards of Chapter 43, i.e., 5 U.S.C. § 4303. Pursuant to that section, an agency may "remove an employee for unacceptable performance." Section 4301(3) defines "unacceptable performance" as "performance of an employee which fails to meet established performance standards in one or more critical elements of such employee's position." The Board ruled under Chapter 43 that petitioner's alleged failure to perform the critical elements of his position was sustained by the requisite *substantial evidence*, pursuant to 5 U.S.C. § 7701(c)(1)(A).

Subsequently the Board reopened the appeal pending a determination in *Wells v. Harris* (J.A. 210). On December 5, the Board decided that case,[2] in which it held, with respect to another dismissal under Chapter 43, that an agency could not dismiss an employee under § 4303 without having first established a performance appraisal system under § 4302.[3] Such system had not been established in Drew's agency. Accordingly, on December 26, the Board

---

1. The two critical elements were (1) the analysis, extracting, coding, and recording of inpatient medical records; and (2) the coding of medical record face sheets called NAVMED 6300/5's (J.A. at 8–11).

2. *Wells v. Harris*, MSPB Order No. RR–80–3.

3. § 4302 provides, *inter alia*, that
   (a) Each agency shall develop one or more performance appraisal systems which—
     (1) provide for periodic appraisals of job performance of employees;
     (2) encourage employee participation in establishing performance standards; and
   (3) use the results of performance appraisals as a basis for training, rewarding, reassigning, promoting, reducing in grade, retaining, and removing employees . . .
   (b) Under regulations which the Office of Personnel Management shall prescribe, each performance appraisal system shall provide for—
   (6) reassigning, reducing in grade, or removing employees who continue to have unacceptable performance, but only after an opportunity to demonstrate acceptable performance.

remanded petitioner's case to the Naval field office and ordered "reconsideration" in light of *Wells.* (J.A. 208–209).

On January 23, 1980, the Presiding Official of the Field Office of the Board wrote a letter to the Civilian Personnel Officer of the Navy, who had presented the case against Drew. Petitioner and his representative received notice of this letter by a copy thereof. This letter indicates that petitioner and his representative were also furnished with the Board's remand order and its entire decision in *Wells v. Harris.*[4] The Board Order (J.A. 208–209) gave petitioner full notice of the status of his case, the reasons therefor, and the fact that under the Board's decision the Navy could seek his dismissal under Chapter 75 should a "preponderance of the evidence"[5] show such action was taken "for such cause as will promote the efficiency of the service." (J.A. 209).

On February 13, 1980, the Navy requested the Board to reconsider petitioner's dismissal under the standards of Chapter 75. (J.A. 213). In that request, the Navy, referring the Board to the original notice sent to petitioner for a review of his job-related failures, stated that his deficient work performance, as had been set forth in the Chapter 43 proceeding, also satisfied the "efficiency of the service" standard for dismissal under Chapter 75.

The appellant's poor work performance adversely affected the ability of the Cen-

ter to accomplish this portion of its mission in a timely and efficient manner. The showing by the agency, through records kept by the employee, that appellant's total work production was far below that of his co-workers performing the same type of work as well as being short of the minimum standard identified as that necessary for efficient government operation leads to the unavoidable conclusion that his removal from employment with the agency and the subsequent placement of a qualified employee into the vacated position will promote the efficiency of the service.

(J.A. 219).

On February 19, 1980, the Board advised Drew's representative (copy to Drew) as follows:

I am enclosing a copy of the February 13, 1980 letter from the agency in which it acknowledges that Mr. Drew was not separated under a performance appraisal system approved by the Office of Personnel Management pursuant to 5 U.S.C. section 4303. Further, the agency elected to request reconsideration of the case, and a new adjudication, under the standards of 5 U.S.C. Chapter 75.

In further compliance with the Order, you are hereby granted twenty (20) days from receipt of this letter to present any supplemental documentary or *testimonial evidence*[6] concerning the issue of wheth-

---

**4.** In accord with the Board's directive you, appellant, and his representative are hereby provided individual copies of MSPB Order No. RR–80–3, Memorandum Opinion and Order in the matter of *Wells vs. Harris.*
(Board Letter of January 23, 1980 (J.A. 210–211)).

**5.** The standard of proof ("by a preponderance of the evidence") required to sustain an agency action on appeal in Chapter 75 adverse actions is a higher one than that for unacceptable performance actions under section 4303, which requires substantial evidence.

**6.** This statement that Drew could present additional "testimonial evidence" called his attention to his right to a hearing. This is one of his rights under 5 U.S.C. § 7701(a) ("an appellant shall have the right—(1) to a hearing for which a transcript will be kept . . ."). Drew request-

ed and received a hearing in the Chapter 43 proceeding. The dissent contends that Drew was not "afforded [his] ... hearing rights" in the Chapter 75 proceeding. However, neither Drew nor his representative requested any additional hearing in the Chapter 75 proceeding. Instead Drew was content to file a six page single spaced written statement and argument (J.A. 221–227) and *neither Drew nor his attorney make any claim on this appeal that Drew was denied any right to a hearing.* Since he received a hearing on his Chapter 43 proceeding, and was informed he could introduce "testimonial evidence" in his Chapter 75 proceeding, and he was represented throughout by the National Representative of the American Federation of Government Employees and did not request a hearing, it is too much to contend that he was not aware of and was denied his right to a hearing.

er, by a preponderance of the evidence, the agency action was taken for "such cause as will promote the efficiency of the service."

(J.A. 212) (emphasis added).

Drew exercised his right "to answer . . . in writing . . . in support of his . . ." position by filing on February 19, 1980, a six page single spaced letter with the Board. (J.A. 221–226). The letter presents Drew's case in great detail.

■ The Navy's letter of February 13, 1980 (J.A. 213–219), the February 19, 1980 letter of the Board's Field Office (J.A. 212) and Drew's letter of February 19, 1980) (J.A. 221–227) indicate that Drew and his representative were given adequate notice of the "specific reasons for the proposed action" (§ 7503(b)(1)) and the evidence necessary to dismiss him under Chapter 75 and that they fully understood the charges and the law applicable thereto (J.A. 212–227).

The statutory requirement that "[a]n employee against whom an action is proposed is entitled to—(1) at least 30 days' advance written notice . . . stating the specific reasons for the proposed action . . .," 5 U.S.C. § 7513(b) was thus satisfied by delivery of the above mentioned documents to Drew and to his "representative in the case." (J.A. 221).

On April 4, 1980, the presiding Naval official dismissed petitioner for reasons authorized by Chapter 75. Petitioner appealed once again to the Board. On October 9, the Board affirmed the decision and petitioner filed the instant appeal.

## II.

Petitioner argues that the notice he received that the Board was proceeding to seek his dismissal under Chapter 75 did not properly inform him of the nature of the proceedings against him. Specifically, he contends the inclusion in that notice of the Chapter 43 terms of art "critical elements" and "performance standards" diverted petitioner's attention from the true charges pending, thus precluding him from constructing an adequate defense in his behalf.

We find this argument unpersuasive. As noted above, petitioner was represented by the National Representative of the American Federation of Government Employees and they were *fully* informed that the dismissal under Chapter 43 had been vacated and that dismissal was now being sought under Chapter 75 for the specific reasons subsequently set forth by the Navy. The February 19, 1980 letter from the Board to petitioner "concerning the issue of whether, by a preponderance of the evidence, the . . . [Chapter 75] . . . agency action was taken for 'such cause as will promote the efficiency of the service'" could not have described the issues more concisely or accurately. Drew was personally notified in plain language, as was his professional representative who represented him throughout *all* the proceedings. That Drew and his representative had full knowledge of the precise charges Drew faced, and of the substantive and evidentiary standards applicable thereto, is fully indicated, as noted above, by Drew's six page letter to the Board responding to the charges brought under Chapter 75 (J.A. 221–227). That he and his representative were fully cognizant that he was being charged under Chapter 75 is apparent from the number of times his letter contends his dismissal would *not* promote "the efficiency of the service" standard which Chapter 75 prescribes. (J.A. 24 ¶'s 6, 7). Any consideration of the "efficiency of the service" and Drew's work deficiencies would necessarily involve his "performance on the job."

■ Inclusion of some Chapter 43 terminology in the Navy's petition for reconsideration, which was attached to the letter petitioner received from the Board, does not detract from the conclusion that his dismissal could promote the efficiency of the service. There is considerable similarity and over-lapping between removal of an employee for "unacceptable performance" and to "promote the efficiency of the service." Both standards have much in common. On this point the Board held in *Andrade v. Department of the Air Force*, MSPB Docket Nos. SF043299011–80–84 through

DC043209002–80–107 (March 24, 1980) (J.A. 293):

Notice to the employees of the proposed action under Chapter 43 adequately met the notification requirements of Chapter 75. Initial invocation by the agency of the incorrect chapter of the U.S.Code has not been shown by the notices for reconsideration to have been harmful error, since there has been no showing that application of Chapter 75 would likely have affected the original agency decision, and our orders have provided for a new agency election on whether to proceed now under Chapter 75.

It is thus clear that petitioner received adequate notice as required by § 7503(b) that Chapter 75 proceedings had been initiated against him.

■ Petitioner argues that even if adequate notice was received, the Chapter 75 dismissal action must fail insofar as it was predicated on alleged inadequate performance grounds ordinarily applicable solely to Chapter 43 proceedings. 5 U.S.C. § 7512(D) provides, "[t]his subchapter . . . does not apply to a reduction in grade or removal under section 4303 of this title. . . ." As § 4303 removals stem from inadequate performance, petitioner reasons that such grounds may not be used to dismiss petitioner under Chapter 75. This argument is unfounded. In amending Chapter 43 in 1978 by establishing the aforemen-

tioned performance appraisal systems, Congress stipulated that such systems need not be fully implemented until October 1, 1981.[7] Until such systems were established, *Wells* held that federal employees could not properly be dismissed under Chapter 43 and that in the interim *Chapter 75 dismissals* could proceed on performance-based grounds. As the Board noted in *Wells*,

Chapter 75 remains available for adverse actions that are performance-related. Section 7512(D) excludes from Chapter 75 only § 4303 actions for "unacceptable performance" as defined in § 4301(3). Nothing in § 7512 prevents action under the provisions of Chapter 75 merely because the action is performance-based. . . . [T]he higher "preponderance of the evidence" standard and the "efficiency of the service" requirement would apply to such actions, but we have found nothing to indicate that Congress intended to prevent agencies from meeting those requirements where they are able to do so.[8]

Petitioner's removal under Chapter 75 on performance-based grounds that would promote the efficiency of the service was proved by a preponderance of the evidence and thus conformed with the applicable statute.[9] The ruling of the Board under review is affirmed.

*Judgment accordingly.*

---

**7.** See 5 U.S.C. § 4302(b)(2).

**8.** *Wells v. Harris, supra,* mem. op. at 5.

**9.** Petitioner contends that his dismissal under Chapter 43 was a "prohibited personnel practice" that was not subject to reconsideration under Chapter 75. Specifically, petitioner notes that his Chapter 43 dismissal was accomplished without the requisite review under the performance appraisal system mandated by 5 U.S.C. § 4302, and claims that the dismissal action accordingly "violates . . . [a] law . . . implementing . . . merit system principles." 5 U.S.C. § 2302(b)(11) (defining prohibited personnel practices). Under 5 U.S.C. § 7701(c)(2), the Board may not sustain an agency decision if there was "(A) harmful error in the application of the agency's procedures in arriving at such decision; (B) . . . the decision was based on any prohibited personnel practice . . .; or (C) . . . the decision was not in accordance with law." Thus, petitioner concludes, the

Board may not sustain his dismissal under Chapter 75 where as here the original dismissal was improper.

This argument is without foundation in this case for two reasons. First, it presumes that once the Navy has initiated dismissal proceedings under one chapter, it may not later seek dismissal under another chapter. This presumption is groundless. A party in petitioner's position may rightly be dismissed under the applicable criteria of any relevant chapter.

Moreover, petitioner's dismissal was clearly not dependent upon the conclusions reached in the course of the alleged prohibited personnel practice. The Board noted on this point,

The agency did not remove [petitioner] because it believed Chapter 43 to be applicable. The agency removed [petitioner] because of dissatisfaction with his work. If the agency had realized at the beginning that it was premature to use the new Chapter 43 as authority for removing an employee, it sim-

MIKVA, Circuit Judge, dissenting:

Suppose a plaintiff were to bring a suit alleging breach of contract and the applicable rules provided thirty days to answer and required an evidentiary hearing before plaintiff could recover. I cannot imagine a court allowing such a plaintiff, following a trial on that complaint, to change his suit to a tort suit, cut down the time allowed the defendant to answer the second complaint and urge that the case be decided on the basis of some additional documents supplied by the parties. That is precisely the kind of convolution allowed by the court in this case. That the defendant is a federal employee, that the cause of action involves the employee's job, and that the "rules" are the specific mandate of Congress only make the cause more compelling.

The specific issue in this case is whether the removal of Frederick Drew from his position with the Department of the Navy followed the procedures required when an employee is removed to promote efficiency of the service, 5 U.S.C. § 7513 (Supp. IV 1980).[1] The Civil Service Reform Act of 1978, Pub.L.No. 95–454, 92 Stat. 1111 (1978), is a relatively new statute that sets out in comprehensive fashion the rights of federal employees threatened by adverse action. It is especially important for such a statute to be construed carefully from the outset. Yet the *per curiam* opinion lets stand the seriously deficient procedures under which Mr. Drew was fired.

## I. THE STATUTORY SCHEME

With the aim of improving the productivity of federal employees, the Civil Service Reform Act (CSRA) added a second basis for removing federal employees—performance appraisal removal—to the preexisting efficiency of the service standard.[2] It is clear from the statute that these two methods of removal are based on different theories and impose different standards of proof upon the government when it proceeds against an employee.

The development of systems for assessing employee performance and for discharging clearly deficient employees was one of the major innovations of the CSRA. It was designed to enable agencies to provide more satisfactory recognition of employees' merit or lack thereof.[3] Under the statute, agencies were directed to develop performance appraisal systems informing employees of the critical elements of their positions and expected performance levels for each element. 5 U.S.C. § 4302(b)(1), (2) (Supp. IV 1980). Employees who fail to meet performance standards for one or more of the critical elements of their positions may be reduced in grade or removed, *id.* § 4303(a). An employee against whom § 4303 adverse action is proposed is entitled to thirty days' advance written notice identifying specific instances of inadequate performance of critical elements, *id.* § 4303(b)(1)(A)(i), (ii); a reasonable time to answer orally or in writing, *id.* § 4303(b)(1)(C); and a written statement of reasons for any adverse action ultimately taken, *id.* § 4303(b)(1)(D)(i). In addition, employees may appeal § 4303 adverse actions to the Merit Systems Protection Board (the "Board"), with full rights to

---

ply would have removed [petitioner] under Chapter 75 proceedings as it ultimately has done.

(J.A. 286). The record thus indicates that petitioner's dismissal was based *solely* on his deficient performance, a permissible criteria for such a dismissal as noted in *Wells*. It was *not* based as petitioner alleges on the criteria improperly applied in the previous Chapter 43 proceeding. Petitioner's attempt to identify a prejudicial prohibited personnel practice must therefore fail.

1. I agree with the majority that the decision in this case to reconsider defective performance appraisal removal, 5 U.S.C. § 4303 (Supp. IV 1980), on the standards of removal for the efficiency of the service, *id.* § 7513, was not itself a "prohibited personnel practice," *see id.* § 2302(b)(11). Slip op. at 8 n.9. Nonetheless, the chequered procedural history of this case surely warrants especially careful scrutiny of the procedures followed in the second removal action under § 7513.

2. S.Rep.No. 95–969, 95th Cong., 2d Sess. 3–4 (1978) [hereinafter *Senate Report*] U.S.Code Cong. & Admin.News (1978) p. 2723.

3. *Id.* at 41; H.R.Rep.No. 95–1403, 95th Cong., 2d Sess. 20 (1978) [hereinafter *House Report*] U.S.Code Cong. & Admin.News (1978) p. 2723.

a hearing and representation, *id.* § 7701(a)(1), (2). The Board is to sustain a § 4303 adverse action which is supported by substantial evidence, *id.* § 7701(c)(1)(A).

The Act also retained the existing method for removing employees in order to further the efficiency of the service, but with revisions designed to provide more extensive procedural safeguards for employees.[4] Removals under § 7513 may be taken "only for such cause as will promote the efficiency of the service," *id.* § 7513(a). An employee against whom § 7513 removal is proposed is entitled to "at least 30 days advance written notice ... stating the specific reasons for the proposed action," *id.* § 7513(b)(1). The employee is entitled to answer, *id.* § 7513(b)(2), and to receive "a written decision and the specific reasons therefore at the earliest practicable date," *id.* § 7513(b)(4). Like employees removed under § 4303, employees removed under § 7513 also have full rights of appeal to the Board, including the right to a hearing, *id.* § 7701(a). Removals under § 7513, however, are to be sustained only if the Board finds the agency's action supported by a preponderance of the evidence, *id.* § 7701(c)(1)(B).

Removal under § 7513 thus differs from removal under § 4303 in two ways which are crucial here: under § 7513 the government must show that the removal will further the efficiency of the service, and § 7513 imposes a higher standard of proof on the government than does § 4303. Either difference might dictate a change in defense strategy by the employee threatened with discharge. All an employee faced with a charge of failure to meet performance standards can do is challenge the standards or show that he met them. An employee facing discharge for the efficiency of the service, by contrast, might want to reply to evidence of deficiencies by showing countervailing instances in which his performance was beneficial. Similarly,

an employee appealing his discharge to the Board on the substantial evidence standard of § 4303 might believe further testimony was fruitless once his employer had introduced substantial evidence; an employee faced with the preponderance standard of § 7513 might not.

## II. ANALYSIS OF THIS CASE

The Navy tried to fire Mr. Drew under § 4303 for failure to meet unofficial performance standards. When the Board held in *Wells v. Harris*, 1 MSPB 199 (1979), that such a discharge was improper, all of the agencies involved in premature utilization of the new law sought to shortcut the retrial of cases in process. I can agree that the record established in the first go-around is usable in the second effort. No procedural or substantive rights are diminished by such an incorporation by reference. But it is wholly beyond the pale for the Board to authorize and for this court to condone serious departures from the procedural rights clearly established by the statute. A letter which at best implies the right to a further hearing does not fulfill the hearing requirement which must be specifically waived by the employee under applicable rules. Twenty days notice is not thirty days notice, and it is improper to piggy-back one notice period onto another, just as it would be improper to credit some kind of oral notice against the thirty day notice required by statute.

Mr. Drew's initial notice of proposed removal informed him of specific instances in which he had failed to perform the critical elements of his position adequately, as is appropriate for removal under § 4303. This notice was not sufficient for subsequent removal under the different standard of § 7513, and the government does not contend that it was.[5]

The decision in *Wells v. Harris* resulted in the reopening of the removals of Mr. Drew

---

4. *Senate Report* at 46; *House Report* at 21–22.

5. *Andrade v. Department of the Air Force*, 2 MSPB 117 (1980) holds only that the mere fact that notice was first issued under § 4303 does not render it inadequate for purposes of § 7513. A decision of the Board, moreover, could not abrogate the statutory requirements for notice under § 7513.

and some twenty-three other federal employees. *Wells* held that agencies could process removals for inadequate performance under either § 4303 or § 7513, as long as they complied with the procedural requirements of the route chosen. *Id.* at 235–36. A general remand order following *Wells* directed agencies to follow these procedures in the reopened cases:

> the presiding official shall provide the agency twenty days in which to request reconsideration of the case under the standards of 5 U.S.C. Chapter 75. If the agency so requests, the presiding official shall provide the parties a reasonable time in which to present any supplemental documentary or testimonial evidence concerning the issue of whether, by a preponderance of the evidence, the action was taken for "such cause as will promote the efficiency of the service." The presiding official shall then issue a new adjudication under the standards of Chapter 75 upon the existing record as supplemented.

Joint Appendix (J.A.) 209. In addition, the remand order required that all parties to the reopened cases be furnished with copies of *Wells.* J.A. 208.

Following this general remand order, the regional presiding officer of the Board inquired whether the Navy intended to seek reconsideration of Mr. Drew's removal under the standards of § 7513, J.A. 210–11. Mr. Drew received a copy of this inquiry, together with a copy of the Board's opinion in *Wells.* After the Navy requested reconsideration, the regional presiding officer sent Mr. Drew a copy of the Navy's request, together with a letter informing Mr. Drew that he had "twenty days from receipt of this letter to present any supplemental documentary or testimonial evidence concerning the issue of whether, by a preponderance of the evidence, the agency action was taken for 'such cause as will promote the efficiency of the service.'" J.A. 212. Mr. Drew was told that the new adjudication would be based on the additional submissions and the evidence of record in the § 4303 proceeding, and that the record would be closed to additional submissions at the end of the twenty day period. *Id.*

The *per curiam* opinion finds that these communications from the Board to Mr. Drew both informed him fully of the new charges against him, and gave him the opportunity to respond that is required by the statute. As the *per curiam* notes, Mr. Drew was informed that his dismissal was being reconsidered under a different substantive standard and a different standard of proof. His written reply, although it mainly reiterates points appropriate to a § 4303 dismissal, appears to recognize the fact that a new charge is at stake. J.A. 221–34, 236–37. Nonetheless, these proceedings did not give Mr. Drew the full opportunity to respond that is contemplated in the statutory scheme.

In appealing an agency's adverse action to the Board, an employee has a right to a hearing. 5 U.S.C. § 7701(a)(1), (2) (Supp. IV 1980). Mr. Drew was informed that he had a right to submit additional "documentary or testimonial evidence" to augment the record for the § 7513 reconsideration. J.A. 212. This is the language standardly used to tell employees that they may make oral submissions during dismissal proceedings at the agency level, where they do not have full hearing rights. In contrast, employees appealing agency dismissals to the Merit Systems Protection Board do have a right to a hearing and are specifically informed of that right and asked whether they intend to waive it. Mr. Drew's initial letter from the Navy proposing his removal under § 4303, for example, informed him and his "right to answer this proposal orally and in writing and to furnish affidavits or other documentary evidence in support of your answer." J.A. 10. His notice of right to appeal the § 4303 dismissal to the Board, however, included copies of the Merit Systems Protection Board regulations, which make the right to a hearing explicit, and the Board's appeal forms, which specifically ask the employee to request or waive a hearing. J.A. 94–121.

Moreover, Mr. Drew apparently did not believe he had a right to a further hearing

on the § 7513 charge. He never explicitly waived such a right, and although he believed that further witnesses would be beneficial he made no effort to seek a new hearing. *See* J.A. 231. The Board decision affirming Mr. Drew's dismissal under § 7513 contains no indication that any further hearing rights were contemplated by either side in the case. This failure to make Mr. Drew's additional hearing rights explicit stands in sharp contrast to the procedures followed in some of the cases remanded at the same time as Mr. Drew's.[6]

In addition, Mr. Drew was given only twenty days in which to augment the record for the § 7513 reconsideration. In initial removal proceedings before the agency, the employee is entitled to at least *thirty* days advance written notice to present evidence in his defense. 5 U.S.C. § 7513(b)(1) (Supp. IV 1980). After adverse agency action, an employee has twenty days in which to appeal to the Board, 5 C.F.R. § 1201.-22(b) (1980). If he requests a hearing, he is entitled to a further fifteen days between the date a hearing is noticed and the date it is scheduled, *id.* § 1201.51. By contrast, on the § 7513 charge, Mr. Drew was granted a total of only twenty days within which to make all further submissions to the record. J.A. 212.

These omissions were not trivial. Defenses are available to Mr. Drew under § 7513 that were not available to him under § 4303. For example, Mr. Drew contends that his union activities, themselves of benefit to the federal government and its em-ployees, accounted for his failure to meet the performance standards. Evidence of the beneficial nature of Mr. Drew's union activities would have been irrelevant to the § 4303 charge, and Mr. Drew did not in fact bring forth any such evidence at his § 4303 hearing. Similarly, after the Navy had concluded its § 4303 case, Mr. Drew failed to call several originally planned witnesses; a different strategy might have been dictated had the government been required to prove its charges by a preponderance of the evidence, as they are under § 7513. Evidence of deficient performance, as the *per curiam* contends, is surely relevant to a dismissal under § 7513. Such evidence, however, is not *all* that is relevant to a § 7513 dismissal. To hold otherwise, as the *per curiam* nearly does, is to collapse different statutory standards into a single removal procedure. Mr. Drew did not receive the full opportunity guaranteed by the CSRA to bring forth all that was relevant to his dismissal under § 7513. His dismissal, therefore, was procedurally deficient.

## III. CONCLUSION

The CSRA was intended to streamline employee dismissal procedures within the federal government. For example, the notice requirement of § 7513(b)(1) requires only a statement of "the specific reasons for the proposed action," whereas its statutory predecessor required a statement of "any and all reasons, specifically and in detail," for a proposed removal. Veterans' Prefer-

---

**6.** The twenty-three cases remanded with *Drew* illustrate the confusion about what procedures were to be followed in the cases reopened by *Wells.* Of the twenty-one dismissals which have been affirmed on remand to date, eleven contain no discussion of additional hearing rights. In three, the discharged employee was specifically offered additional hearing rights but declined the opportunity. Five employees requested and received additional hearings; two of these received specific indication of their right to request a further hearing. One employee was offered the opportunity to submit additional "documentary and testimonial evidence," as was Drew, and the examiner specifically regarded her failure as a failure to request a hearing. *Lawson v. Veterans Administration*, No. DA075209159 (Merit Systems Protection Board May 9, 1980). One employee requested a hearing but was denied one on the ground that § 7513(c) does not mandate a hearing. *Lopez v. Department of the Army*, No. AT075209126 (Merit Systems Protection Board May 1, 1980). Several of the hearing examiners appear to have regarded the right to a hearing as separate and additional to the right to submit "documentary and testimonial evidence." *See, e.g., Catliff v. Department of the Army*, No. NY075209126 (Merit Systems Protection Board June 3, 1980); *Blaes v. Veterans Administration*, No. SL075209040 (Merit Systems Protection Board March 21, 1980) (Blaes informed of her right to submit new documentary and testimonial evidence and "was additionally advised of her right to request a hearing on the matter.").

ence Act of 1944 § 14, Pub.L.No. 359, 58 Stat. 390 (1944) (repealed 1978). In making the change, Congress intended to diminish the likelihood that dismissals would be reversed for procedural deficiencies, especially the failure to enumerate all instances of unsatisfactory employee conduct. Congress did not, however, intend to deprive the employee of a full and fair opportunity to reply to the charges against him:

> The change is intended to reduce the degree of detail now sometimes required in order to avoid reversal on procedural grounds. The agency must still tell the employee the reasons for the proposed action in sufficient detail to allow the employee to make an informed reply.

*Senate Report* at 50, U.S.Code Cong. & Admin.News (1978) p. 2772. The preponderance of the evidence standard of proof imposed on the government in dismissals under § 7513 is another indication of Congress's intention to safeguard federal employees while at the same time removing unnecessary barriers to removal.

Only one circuit appears to have considered the new notice requirement of the CSRA,[7] and it did so in a case markedly similar to *Drew*. In *Knuckles v. Bolger*, 654 F.2d 25 (8th Cir. 1981), the Eighth Circuit held that notice of discharge for converting postal service money did not afford the employee an adequate opportunity to defend against a subsequent charge of violating post office accounting procedures, based on the same incident. The *Knuckles* court emphasized that the CSRA requires ensuring employees full opportunity to respond to the charges against them:

> Rather than give Knuckles an opportunity to respond to the charge of a violation of accounting procedures, the presiding official merely assumed the violation as required by the Board's opinion and or-

der, and asked whether Knuckles had been given sufficient notice of the charges against him. Had Knuckles been permitted to respond directly to the violation of accounting principles charge, uncomplicated by any uncertainty about notice of the charge, he may have been able to raise and prove a number of defenses, including that the accounting procedures were invalid, that he had legitimate reasons for not strictly following the procedures, or that his discharge was arbitrary and capricious because he was treated more severely than other employees who had violated the same or similar postal service rules.

654 F.2d at 28.

Congress did indeed seek to simplify the means by which inefficient employees can be separated from federal service. If and when the Navy finalizes its performance standards, it can use the new Chapter 43 procedures. Until then the Chapter 75 procedures dictate the procedures under which federal employees can be discharged. It is not for this court or the Board to fashion a hybrid procedure and pronounce that it is just as good as anything Congress can do.

I dissent.

---

7. The Court of Claims has also considered the 1978 notice requirement for § 7513 removal. *Brewer v. United States Postal Service*, 647 F.2d 1093 (Ct.Cl.1981), holds that a charge of specific instances of falsifying time cards, based on identified affidavits, was adequate "to apprize the petitioner of the nature of the charges against him." The case did not involve a change in charges, but concerned the specificity with which instances of misconduct must be detailed. The legislative history is clear that Congress meant the new notice provision to cut down reversals based on failure to enumerate each specific instance of alleged misconduct. *Senate Report* at 50. Failure of enumeration, however, differs strikingly from failure to state the charges themselves.