**Alfonso DEBOSE, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, Respondent.**

**No. 81–7241.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 9, 1983.

Decided March 8, 1983.

W. Mitchell Cogdill, Cogdill, Deno & Millikan, Everett, Wash., for petitioner.

Virginia Strasser, Washington, D.C., for respondent.

Before SKOPIL, PREGERSON and FERGUSON, Circuit Judges.

FERGUSON, Circuit Judge:

Alfonso Debose appeals from an opinion and order of the Merit Systems Protection Board issued March 17, 1981 upholding the Department's action in terminating him for unacceptable performance. We affirm.

FACTS:

Alfonso Debose, a college-trained agronomist, has been employed by the Department of Agriculture as a soil scientist within the Soil Conservation Service since 1965. In his latest position, Debose was responsible for determination of soil types in the field and for preparation of maps indicating the location of various soils. The maps, called field sheets, are aerial photographs of the inspected area upon which the soil scientist makes notations. Cartographers working from the field sheets then prepare finished maps for publication.

In June 1979, Debose received a letter from his immediate supervisor informing him that in the preceding five months he had mapped only about twenty percent of the amount of land expected. Standards for Debose's position set 2,000 acres a day as an excellent performance and 640 as the minimum acceptable. The letter warned Debose that he had sixty days in which to improve his performance or face an action to fire or demote him. It set the amount which should be mapped in the sixty-day period at 640 acres a day, the quality of mapping to be maintained at the standards set in specified publications.

Within the sixty-day period, Debose met the quantity requirement, mapping an average of 868 acres daily. However, also within that period, his superiors noted and called to his attention a large number of errors which he failed to correct. In January 1980, Debose was notified by official letter that in thirty days he would be terminated for failure to meet established performance requirements.

The letter grouped the grounds for termination into four specifications. Specification One was based upon a day of observation during which Debose's superiors accompanied him in the field. Based on their observations, the agency asserted that Debose demonstrated lack of a unified mapping concept, displayed only superficial efforts to identify soil classification, and produced work which required a great deal of field verification. Specification Two, based upon twelve photographic field sheets submitted during the sixty-day period, charged a variety of mapping errors which Debose had failed to correct although he had been ordered to do so within the period. The errors were serious enough to prevent a cartographer from completing a final, publishable product and to require additional field investigation. Specification Three embodied three technical appraisals of Debose's work by his supervisors based upon two additional field sheets and a trip which they had made to an area which Debose had previously mapped. They found that his work was poorly done and required close review. Specification Four dealt with the unsatisfactory results of a field trip taken in November 1979 when Debose was given the opportunity to respond to the charges made in Specification Three, and states that after the sixty-day period the quantity of acreage mapped by Debose once again decreased to about fifty percent of the minimum required. The letter also informed Debose of his right to answer the charges and inspect the materials upon which they were based.

After various intra-agency procedures, Debose was terminated in May 1980. He then requested a hearing before the Merit Systems Protection Board. The hearing ex-

aminer issued an initial decision affirming the agency action, which Debose took to the board for review on grounds of failure to follow the applicable statutory procedures, improper admission of secondary evidence violating his due process confrontation rights, and insufficient evidence. The board affirmed the initial decision. Debose now petitions, on the same grounds, for review of the board's order. 5 U.S.C. § 7703.

DISCUSSION:

Title 5 U.S.C. § 7703(c) sets forth the applicable standard of review:

> In any case filed in the United States Court of Claims or a United States court of appeals, the court shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be—
>
> (1) arbitrary, capricious, an abuse of discretion or otherwise not in accord with law;
>
> (2) obtained without procedures required by law, rule, or regulation having been followed; or
>
> (3) unsupported by substantial evidence.

*Brewer v. United States Postal Service,* 647 F.2d 1093, 1096 (Ct.Cl.1981), *cert. denied,* 454 U.S. 1144, 102 S.Ct. 1005, 71 L.Ed.2d 296 (1982).

I. *Termination Under Section 7513 versus Termination Under Section 4303*

■ Debose contends that because the agency removed him from his position for failure to meet established performance requirements, he was entitled to the procedures accorded civil service employees under sections 4302 and 4303 of the Civil Service Reform Act of 1978. 5 U.S.C. §§ 4302–03.[1] He argues that while section 4303 authorizes removal of an employee for unacceptable performance, the agency was obligated under section 4302 to have provid-ed a uniform system for evaluating employees and assisting them in the improvement of their performances prior to his removal. The board has previously held that to remove an employee under section 4303, a section 4302 performance appraisal system must be in effect. *Wells v. Harris,* 1 M.S.P.B. 199, 230 (1979). The agency acknowledges that at the time of Debose's termination it had no such system in operation. The agency therefore proceeded under an older section, 5 U.S.C. § 7513(a), which allows removal of an employee in order to promote of the efficiency of the federal service.

The propriety of proceeding under § 7513(a) in these circumstances has not previously been decided in this circuit. It has, however, been carefully and, we believe, soundly addressed by the board in its *Wells* decision, and we adopt its reasoning. *Accord, Kochanny v. Bureau of Alcohol, Tobacco & Firearms,* 694 F.2d 698, 700–01 (Fed.Cir.1982); *Drew v. U.S. Dep't of the Navy,* 672 F.2d 197, 201 (D.C.Cir.1982).

The board noted in *Wells* that the legislative history of the Civil Service Reform Act reveals that the intent of Congress in enacting sections 4302 and 4303 was to make it easier, rather than harder, for government agencies to terminate employees whose performance was inadequate. 1 M.S.P.B. at 229, 235–36. Contrary to Debose's assertions, it is easier to remove an employee under section 4303 than it is under section 7513. *Id.* at 236; *Drew,* 672 F.2d at 203. A section 4303 removal may be accomplished if the employee performs unacceptably in one or more of the critical elements of the job; the proof is by substantial evidence. *Wells,* 1 M.S.P.B. at 235; *Drew,* 672 F.2d at 202–03. A section 7513 removal may only be for promotion of the efficiency of the federal service; the proof is by preponderance of the evidence. 5 U.S.C. § 7701(c)(1);

---

1. The Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111 (1978), is codified in scattered titles of 5, 10, 15, 28, 31, 38, 39 and 42 of the U.S.C.

Section 4302 mandates the establishment of "one or more" performance appraisal systems, to begin operation "as soon as practicable, but not later than October 1, 1981." 5 U.S.C. § 4302(a), (b)(2). Section 4303 permits demotion or removal "for unacceptable performance." 5 U.S.C. § 4303(a).

*Drew,* 672 F.2d at 203. In its discussion of the inter-relationship of sections 4302, 4303 and 7513 of the Act, the board held that the more relaxed standard for termination embodied in section 4303 mandated that the protections of the neutral section 4302 appraisal plan be in effect before an agency began such terminations. *Wells,* 1 M.S.P.B. at 227.

However, the board also noted that with the expressed congressional concern for the damage done to the civil service by its inability to rid itself of inept employees, it could not have been the intent of Congress to declare a moratorium on such terminations until the time that section 4302 appraisal plans became fully operational. *Id.* at 235. It therefore turned to the termination procedures of section 7513 and held:

> If an agency sees some advantage in pursuing a performance-based action under Chapter 75, it is not inconsistent with the Act so long as the agency meets the higher burden of proof—and the more difficult standard of demonstrating that the action will promote "efficiency of the service." There is not the slightest evidence in the legislative history to suggest that Chapter 43 was ever to be a refuge for employees to escape Chapter 75. Chapter 43 originated as a relief measure for agencies and was enacted for that purpose.

*Id.* at 236. It said further:

> The Senate Report by inference can be read to mean that Chapter 75 is available for any action not brought under § 4303 and the option remains for the agency to choose whether to proceed under Chapter 43 or Chapter 75.

*Id.* at 236 n. 90.

The *Wells* analysis is directly applicable to the fact pattern before us. The Soil Conservation Service had no section 4302 appraisal plan in effect at the time when it moved to terminate Debose for inadequate performance. However, it was not statutorily obligated to have one established until eighteen months after it informed Debose that he was to be terminated. *See* 5 U.S.C. § 4302(b)(2). Therefore, unless the agency

was to find itself in exactly the moratorium upon such firings which *Wells* rejects, its only option was to proceed under the more difficult standard of section 7513, which it elected to do.

■ The Merit Systems Protection Board is the administrative body designated by statute to apply the provisions of the Act. As such, its interpretations are entitled to great deference. *New York State Dep't of Social Service v. Dublino,* 413 U.S. 405, 421, 93 S.Ct. 2507, 2516, 37 L.Ed.2d 688 (1973); *Adams v. Howerton,* 673 F.2d 1036, 1040 (9th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 3494, 73 L.Ed.2d 1373 (1982). It has considered the exact point raised by the petitioner in this review, and in a thorough analysis of the statute and its legislative history, concluded that an agency may proceed as the Soil Conservation Service has here. We adopt that conclusion.

## II. *Due Process Claims*

### A. *Due Process Liberty Rights.*

■ Debose asserts that his professional reputation and opportunity for future employment have been harmed by his termination. However where, as here, there is no charge of dishonesty or immorality, no serious damage to an employee's standing and associations in the community can be shown. *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). A liberty interest in future employment is only abridged when an employee's termination creates a stigma foreclosing freedom to take advantage of other employment opportunities. *Id.* There can be no such stigma when there is no public disclosure of the reasons for discharge. *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976). Even if there were disclosure, charges of substandard performance such as those made here do not rise to the level necessary to infringe a liberty interest, thereby triggering constitutionally mandated procedural due process protections. *Mazaleski v. Treusdell,* 562 F.2d 701, 713 (D.C.Cir.1977); *Russell v. Hodges,* 470 F.2d 212, 216–17 (2d Cir.1972).

## B. Due Process Property Rights.

Section 7513 creates for federal civil servants a property interest in retaining their jobs. However the statute and its accompanying regulations governing removal:

did not create an expectancy of job retention in those employees requiring procedural protection under the Due Process Clause *beyond that afforded here by the statute and related agency regulations.*

*Arnett v. Kennedy,* 416 U.S. 134, 163, 94 S.Ct. 1633, 1648, 40 L.Ed.2d 15 (1974) (plurality opinion, construing rights arising under exact language of § 7513 as embodied in predecessor statute) (emphasis supplied); *see Rubio v. Hampton,* 384 F.Supp. 218, 221–22 (C.D.Cal.1974). The process due Debose in this proceeding is that specified within the Act and its regulations.

Debose contends that his due process right to confrontation of witnesses was violated, first, by the admission into evidence of eight field sheets which bore handwriting not his own which had been added later by other employees of the agency, some of whose entries destroyed his own, and second, by the hearing examiner's admission into evidence of testimony by his supervisors regarding the errors which these sheets had contained when they were first submitted by him.

### 1. The Documentary Evidence

With respect to documentary evidence upon which charges are based, the pertinent regulations provide that the notice of proposed termination must "inform the employee of his or her right to review the material which is relied upon to support the reasons for action given in the notice." 5 C.F.R. § 752.404(b)(1). They prohibit reliance on material which cannot be disclosed to an employee, *id.,* and they require that on appeal to the MSPB the agency provide to the appellant "all documents contained in the agency record of the proceeding." 5 C.F.R. § 1201.25(a)(4) & *see* § 1201.61. Debose was timely given a copy of the agency's document file in order to examine the

evidence and prepare his defense. However, he argues here that he was deprived of due process rights of confrontation and cross-examination because "many of the original field sheets submitted by [him] had been lost or destroyed by the agency prior to the hearing." In order to evaluate this contention properly, a careful review of the facts is necessary.

The charges upon which Debose's termination is based are embodied in four specifications which mention fourteen field sheets. Of these fourteen, eight contain the handwriting of others, while six are exactly as Debose submitted them. Contrary to Debose's assertions, no sheet is completely lost or destroyed. Certain entries on eight sheets have apparently been obliterated in whole or in part by entries in the handwriting of others.

Specification One mentions only two field sheets, and those peripherally. The third specification does not involve the altered sheets at all; the sheets involved are in the form in which Debose submitted them. Specification Four involves no field sheets at all. Thus, three of the four specifications are not affected by Debose's due process contentions. His termination would have been sustainable on the grounds of these unaffected specifications alone.[2]

In Specification Two, twelve sheets are listed and a detailed account of the mapping errors which they contained is given. Of these twelve, eight were altered, but four were precisely as Debose submitted them. As to the alterations affecting Specification Two, Debose has not carried his burden of showing that he was prejudiced by them. 5 C.F.R. § 1201.56(c)(3) (petitioner has burden to show the harm of a procedural error). He does not deny having made the errors with which he was charged, nor does he contend that any of the errors charged appeared in the writing of another person. He contends rather that the errors were minor or involved data about which scientists might disagree. Agency witness-

---

**2.** For example, Specification Three dealt in part with a mapping error in which a lake, visible from the only road which crossed the area, was shown as a gravel pit.

es testified to the contrary. They also testified that this small sample of Debose's work was representative. Debose did not dispute that testimony or offer to enter additional field sheets into evidence.

Debose's reliance on *Newman v. Board of Education of City School District of New York,* 594 F.2d 299 (2d Cir.1979), is misplaced. Newman, a teacher, was placed on extended leave of absence after being found mentally unfit for duty. The school board relied, in part, on elaborate medical and psychiatric tests which had been performed by its psychiatrist. Newman was given no access to the test data, but only to a brief, general summary of the results. The Second Circuit held that this denied her due process in that it was fundamentally unfair because her inability to see the material prevented her from demonstrating possible erroneous assumptions by the board and from offering pertinent contrary evidence. *Id.* at 305.

■ In the instant case, far from never seeing the underlying material, the petitioner actually created it during a time period when he knew that it was being evaluated with an eye to his possible termination. Errors which occurred in a number of the altered sheets in Specification Two were called to his attention at the time that he submitted the sheets, and he was ordered to make corrections. He failed to do so. In the agency file made available to Debose, along with the altered maps, there were contemporaneously written accounts of the errors which the maps had contained when originally submitted, prepared by those who testified against Debose at his hearing. Thus, he had seen the material, had had its errors called to his attention at the time he submitted it and subsequently, and had an account of the errors to which witnesses planned to testify. Under the circumstances of this case, admission of the field sheets containing additional handwriting did not violate the petitioner's due process rights.

### 2. Admission of Secondary Evidence

Because subsequent handwritten entries on eight of the field sheets had destroyed some of the original entries made by Debose, the hearing examiner allowed agency witnesses to testify about the errors as they had originally appeared. Debose contends that this also violated his due process confrontation rights. We disagree.

■ First, formal rules of evidence do not control at a Merit Systems Protection Board hearing. *See Calhoun v. Bailar,* 626 F.2d 145, 148 (9th Cir.1980). The controlling regulations give a hearing examiner broad discretion to admit most forms of evidence, excluding that which "is irrelevant, immaterial, or unduly repetitious." 5 C.F.R. § 1201.62(a). Debose thus received the due process to which he was entitled under the regulations. *Arnett,* 416 U.S. at 163, 94 S.Ct. at 1648.

However, the hearing examiner did not ground her ruling in the regulations, but rather looked to Federal Rule of Evidence 1004, cases construing it, and commentators, for guidance in her decision. Rule 1004 reads in pertinent part:

> The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if
>
> . . . .
>
> All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith . . . .

The examiner noted that both the *Federal Rules of Evidence Manual* 686–88 (2d ed. 1977) and *McCormick on Evidence* 575 (2d ed. 1978) would permit oral evidence to be taken on the contents of a destroyed writing. *Accord, United States v. Gerhart,* 538 F.2d 807, 809 (8th Cir.1976) (contents of such a writing may be proven by any means "subject to attack by the opposing party not as to admissibility but as to the weight to be given to the evidence . . . ."). The *Gerhart* court noted that where oral testimony is used, the opponent may attack the credibility of the witnesses. *Id.* at n. 2. Debose had that opportunity.

■ The hearing examiner specifically held that there was no bad faith involved in the destruction of the entries; there is substantial evidence in the record to support

that finding since the agency regarded the field sheets as work product and as a part of its routine process continued to alter and amend them in order to ready them for the cartographers. Debose's due process property rights were not infringed by the hearing examiner's rulings on admissibility of evidence.

### III. *Substantial Evidence*

The board found that a preponderance of the evidence showed that Debose's inadequate performance damaged the efficiency of the federal service. *See Wells v. Harris,* 1 M.S.P.B. at 235–36. By statute this court must "set aside any agency action, finding, or conclusion found to be ... unsupported by substantial evidence." 5 U.S.C. § 7703(c)(3). *Brewer v. United States Postal Service,* 647 F.2d at 1096.

 Petitioner argues *inter alia* that the work he did after the thirtieth day of the review period was not considered; however the hearing examiner found that the only charge in Specification Four dealt with Debose's failure to meet the prescribed amount of mapping acreage *after* the close of the sixty-day period. A number of the other contentions raised here, e.g., that the errors were of common types often made by all soil scientists, were considered at length by the hearing examiner and rejected after a careful summary and weighing of the contrary evidence in the record. The agency witnesses appeared and testified to the truth of the charges in the specifications. Substantial evidence supports the board's determination.

### IV. *Removal*

Debose contends that at most his petty errors would justify demotion. Under 5 U.S.C. § 7703(c)(1), we review whether the decision to terminate rather than demote was an abuse of discretion. *Brewer v. United States Postal Service,* 647 F.2d at 1098. The hearing examiner held that the evidence showed that Debose's work was so inaccurate that much of it had to be redone. One of his superiors testified that up to fifty percent of his work was erroneous.

Debose did not deny the inaccuracies. He did argue that he needed more office time to correct them, but he did not request such a time allocation. Moreover, Debose's field sheets were initialed and submitted as finished work, signifying that this office review was supposed to have been completed. Addressing directly the testimony about the remapping arising out of Debose's errors, the examiner said:

> Obviously, this duplication of effort and realignment of personnel resources hindered the agency's mission, i.e., accurate and timely mapping. Therefore, I find that the sustained charge is sufficient to support the penalty of removal. Accordingly, the action was taken for such cause as does promote the efficiency of the Federal service.

We find no abuse in the agency's choice of removal as the appropriate course of action.

AFFIRMED.