Albert J. LOVSHIN, Petitioner,

v.

DEPARTMENT OF the NAVY,
Respondent.

Appeal No. 84-1002.

United States Court of Appeals,
Federal Circuit.

June 21, 1985.

Skelton, Senior Circuit Judge, filed dissenting opinion in which Kashiwa, Bennett, and Pauline Newman, Circuit Judges, and Jack R. Miller, Senior Circuit Judge, joined.

Pauline Newman, Circuit Judge, filed dissenting opinion in which Kashiwa and Bennett, Circuit Judges, and Jack R. Miller, Senior Circuit Judge, joined.

828

Douglas Stenzel, Ventura, Cal., argued for petitioner.

Charles Schlumberger, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With him on brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director and M. Susan Burnett, Washington, D.C.; Dale Birdoff, Dept. of the Navy, Washington, D.C., of counsel.

Evangeline W. Swift, Gen. Counsel, Mary L. Jennings, Associate Gen. Counsel for Litigation and Marsha E. Mouyal, Office of the Gen. Counsel, Merit Systems Protection Bd., Washington, D.C., were on brief, for intervenor, Merit Systems Protection Board.

Before MARKEY, Chief Judge, FRIEDMAN, RICH and DAVIS, Circuit Judges, SKELTON, Senior Circuit Judge, BALDWIN, KASHIWA and BENNETT, Circuit Judges, MILLER,* Senior Circuit Judge, SMITH, NIES, NEWMAN and BISSELL, Circuit Judges.**

* Judge Miller assumed senior status effective June 6, 1985.

** This case was argued before a panel consisting of Kashiwa and Miller, *Circuit Judges,* and Skelton, *Senior Circuit Judge,* on November 6, 1984.

NIES, Circuit Judge.

## I.

In this appeal, this court must consider the effect of amendments to Chapters 43 and 75 of Title 5 made by the Civil Service Reform Act of 1978, Pub.L. 95–454, 92 Stat. 1121 (CSRA). Petitioner, Albert Lovshin, was removed from his position as Electronics Engineer for the Department of the Navy (agency) at the Naval Ship Weapons Engineering Station, Port Hueneme, California, effective November 30, 1981. On appeal to the Merit Systems Protection Board (MSPB or board), the agency action was sustained as meeting the standards and procedures required by Chapter 75 of the CSRA. As originally briefed on appeal, petitioner asserted that (1) the agency charge of unsatisfactory performance in his work was not proved, (2) the removal action was in retaliation for petitioner's whistleblowing activities, (3) the agency committed harmful error in its removal procedures, (4) the presiding official of the MSPB violated procedural due process in the manner of conducting discovery and the hearing, and (5) the agency improperly removed him during the pendency of an agency-initiated disability retirement application. The agency argued that the presiding official's decision was correct in all respects and should be upheld.

Subsequently, the MSPB was allowed to intervene in this appeal. The MSPB asks that this case be remanded because it may have been improperly considered under Chapter 75. In *Gende v. Department of Justice*, 23 M.S.P.R. 604 (1984), a decision issued on October 22, 1984 during the pendency of this appeal, the board held that Chapter 43 was the exclusive procedure for performance-based actions *effected* after October 1, 1981, and that Chapter 75, with several exceptions, was no longer available after that date for effecting such actions. Because the action against petitioner Lovshin was performance-based and was effective on November 30, 1981, this action *prima facie* falls within the *Gende* ruling. If the case is remanded, the MSPB states that the agency would be allowed to show,

if it could, that, *in effect*, it complied with Chapter 43 or that the action falls within one of the exceptions the MSPB has stated to the *Gende* rule.

Petitioner and the agency were allowed to file supplemental briefs on this issue. Petitioner endorses the MSPB statutory interpretation but argues against remand on the ground that the removal action is irretrievably defective because the agency's performance appraisal systems under Chapter 43 were not in place until after his removal. The agency argues that, under the precedent of this court set forth in *Kochanny v. Bureau of Alcohol, Tobacco and Firearms*, 694 F.2d 698 (Fed.Cir.1982) and in *Turnage v. United States*, 230 Ct.Cl. 799 (1982), Chapters 43 and 75 are alternative methods for removal of employees for performance-based reasons, and that the MSPB's interpretation of the statute in *Gende* is in error.

Having taken the case in banc because endorsement of *Gende* would require modifying the precedential analysis in *Kochanny* and *Turnage*, we reaffirm that Chapter 75 may be used to remove an employee for performance-based reasons, provided the agency meets all requirements for establishing "such cause as will promote the efficiency of the service."

In sum, we conclude that (1) the usual deference which a court must give the interpretation of a statute by the agency charged with its administration is not appropriate in this instance because the MSPB itself has not taken a consistent position; (2) the predecessor of Chapter 75 was long used for removals based on poor performance and the legislative history discloses no expressed intent by Congress to repeal such use; (3) Chapters 43 and 75 establish separate *procedural* mechanisms, both of which can be used to obtain the objectives Congress sought in enacting the CSRA; (4) there is no necessary conflict in utilizing both chapters for such actions; and (5) if Chapter 43 only were available for the disciplining of employees for poor

performance, there would be serious omissions and anomalies.

On the merits of this case, we hold that the removal action against petitioner Lovshin must be sustained. However, an issue has been raised with respect to petitioner's entitlement to pay under 5 C.F.R. § 831.1206 prior to OPM's decision on an involuntary disability claim. We find it appropriate to remand for determination of this issue in the first instance by the MSPB.

## II.

### The Civil Service Reform Act

This case raises a question of statutory interpretation of the effect of the CSRA amendments to Chapter 43 on Chapter 75. As background to this analysis, we begin with a brief review of the history and purpose of these chapters.

Chapter 43, before and after enactment of the CSRA, is directed to the *evaluation* of a federal employee's work performance. Chapter 75, before and after enactment of the CSRA, is concerned with removals and other disciplinary action.

The substantive ground for taking an adverse action under Chapter 75 has been in the civil service law essentially unchanged since 1912 with enactment of the landmark Lloyd-LaFollette Act. A single basis for disciplinary action has been continuously provided therein: "only for such cause as will promote the efficiency of the service." 5 U.S.C. § 7513(a).[1] No limitation on the type of wrongful conduct by an employee which might lead to disciplinary action "for cause" is specified in Chapter 75. Poor performance of the duties of a position has been an accepted basis and, indeed, Chapter 75 provided the only framework for disciplinary action for performance reasons prior to the CSRA amendments to Chapter 43.

A formal system of periodic rating of a federal employee's work performance has long been part of civil service procedures. The pre-1978 provisions of Chapter 43 required an agency to rate the overall work performance of an employee as "satisfactory," "unsatisfactory," or "outstanding." 5 U.S.C. § 4301 *et seq.* (1976). A performance rating of "unsatisfactory" was stated to be "a basis for removal." 5 U.S.C. § 4304(b) (1976). Before rating an employee "unsatisfactory," an agency was required to give the employee 90 days warning and a reasonable opportunity to improve. An "unsatisfactory" *rating* was reviewable through review procedures in the agencies and the Civil Service Commission.

A provision relating to removal based on an "unsatisfactory" *rating* has been part of the evaluation chapter since the Performance Rating Act of 1950, codified at 5 U.S.C. § 2001 *et seq.* (1952).[2] The 1950 statute stated that an "unsatisfactory" performance rating "shall serve as a basis for removal." 5 U.S.C. § 2005 (1952). The provision was interpreted by some agencies as providing an independent basis for removal. However, that presumption was short-lived. The U.S. Court of Claims, as well as other courts, held that it did not. After an "unsatisfactory" rating was upheld through review procedures, an agency could use the *rating* "as a basis for removal" only by thereafter taking action "for cause" under Chapter 75 (or Chapter 14 of the Veterans Preference Act, if applicable).[3]

The courts were also confronted with a question similar to that presented in this appeal: Were the rating *procedures* in Chapter 43 superimposed on actions under

---

1. *Cf.* 37 Stat. 555 (1921): "no person in classified civil service of the United States shall be removed therefrom except for such cause as will promote the efficiency of said service." The immediate predecessor language can be found in 5 U.S.C. § 7501(a) and § 7512(a) (1976) with respect to employees in the "competitive service" and "preference eligible employees," respectively.

2. For a history of performance rating, see App. I to H.R.Rep. No. 2162, 81st Cong., 2d Sess. 13 (1950).

3. *Chisholm v. U.S.,* 149 Ct.Cl. 8 (1960); *Atkinson v. U.S.,* 144 Ct.Cl. 585 (1959); *Thomas v. Ward,* 225 F.2d 953 (D.C.Cir.1955).

Chapter 75, where the basis for the adverse action was performance-based? In a series of decisions, the courts held that the provisions for rating employees as part of the comprehensive system for promoting efficiency in the government service "did not directly or by implication modify or supersede the authority of the appropriate officials to demote [or remove] under procedures and regulations specifically applicable to personnel action of that character." *Jones v. Hobby,* 223 F.2d 345· (D.C.Cir. 1955).[4]

The pre-1978 Chapter 43 performance rating system was glaringly ineffective for managers and employees alike. As Congress stated, S.Rep. No. 969, 95th Cong., 2d Sess. 3, 40, *reprinted in* 1978 U.S.Code Cong. & Ad.News 2723, 2725, 2762 (Senate Report):

> Assaults on the merit system have taken place despite, and in some instances because of, the complicated rules and procedures that have developed over the last century. The welter of inflexible strictures that have developed over the years threatens to asphyxiate the merit principle itself.
>
> The complex rules and procedures have, with their resultant delays and paperwork, undermined confidence in the merit system. Many managers and personnel officers complain that the existing procedures intended to assure merit and protect employees from arbitrary management actions have too often become the refuge of the incompetent employee. When incompetent and inefficient employees are allowed to stay on the work rolls, it is the dedicated and competent employee who must increase his workload so that the public may be benefitted. The morale of even the best motivated employee is bound to suffer under such a system. Moreover, the system's rigid procedures—providing almost automatic pay increases for all employees—makes it as difficult to reward the outstanding public servant as it is to remove an incompetent employee.

> \* \* \* \* \* \*

> In addition, few outstanding ratings are assigned because the statutory criterion requires outstanding performance in all aspects of the job, a criterion that extremely few individuals can meet. The unsatisfactory rating is little-used because the assignment of such a rating can have a useful purpose only with follow-on action which is usually time-consuming, expensive, and aggravating for all parties concerned. Under the provisions of 5 U.S.C. 4305, an employee is now entitled to an impartial review of the rating within the agency as well as a hearing before a board of review chaired by a member designated by the Civil Service Commission. This review and hearing process relates only to the rating itself. If an unsatisfactory rating is sustained through this process, and it is decided to remove the employee, such action must then be initiated and processed under the adverse action procedures. Thus, the entire process for taking action on the basis of unsatisfactory performance is slow. It serves as a deterrent to taking action that might otherwise be appropriate.

With these and other deficiencies in mind, Congress enacted "the most comprehensive reform of the Federal work force since passage of the Pendleton Act in 1883." Senate Report at 1, 1978 U.S.Code Cong. & Ad.News at 2723. For the first time, the merit principles, which had always been intended to underlie the Federal personnel system, were specifically enacted into law. Senate Report at 2, 1978 U.S. Cong. & Ad.News at 2724. The fervor with which Congress endorsed merit principles can be discerned in the section of the report headed "The Need For Reform."

---

**4.** *Accord, Seebach v. Cullen,* 224 F.Supp. 15 (N.D.Cal.1963); *Alpert v. U.S.,* 161 Ct.Cl. 810, 816 (1963); *Allen v. U.S.,* 155 Ct.Cl. 598 (1961), and cases cited therein at 600; *Monday v. U.S.,* 146 Ct.Cl. 6 (1959); *Sells v. U.S.,* 146 Ct.Cl. 1 (1959); *McGinty v. Brownell,* 249 F.2d 124 (D.C. Cir.1957); *Misuraca v. U.S.,* 135 Ct.Cl. 387 (1956); *Thomas v. Ward,* 225 F.2d 953 (D.C.Cir. 1955); *DeBusk v. U.S.,* 132 Ct.Cl. 790 (1955).

Recognizing the tension between "the rights of employees" versus the "need for management flexibility," Congress viewed the matter of reform and the importance of merit principles not from the "limited perspective" of either employees or management, but from the advantage to the *public*, stating:

> Although it has recognized this tension, the Committee has viewed civil service reform from the standpoint of the public, rather than the more limited perspective of either the employee or manager. The "rights of employees" to be selected and removed only on the basis of their competence are concomitant with the public's need to have its business conducted competently. Similarly, the need for Federal executives to manage their personnel responsibilities effectively can only be justified by the benefit derived by the public from such management flexibility. An employee has no right to be incompetent; a manager has no right to hire political bed fellows [sic].
>
> The public has a right to an efficient and effective Government, which is responsive to their needs as perceived by elected officials. At the same time, the public has a right to a Government which is impartially administered. One of the central tasks of the civil service reform bill is simple to express but difficult to achieve: Allow civil servants to be able to be hired and fired more easily, but for the right reasons. This balanced bill should help to accomplish that objective. It is an important step toward making the Government more efficient and more accountable to the American people.

Senate Report at 4, 1978 U.S.Code Cong. & Ad.News at 2726.

The reforms in the civil service system made by the CSRA which are most pertinent to the issues in this appeal are those effected in Chapters 23, 43, 75, and 77, a summary of which follows.[5]

## A.
### *Chapter 23*

Chapter 23 establishes in law for the first time a codification of the merit principles of the Federal personnel system and the specific practices prohibited in the system. Agencies must adhere to a list of nine principles which include, *inter alia*, with respect to performance:

(a) Recruitment and advancement is to be based on relative ability, knowledge and skills, i.e., equal opportunity (§ 2301(b)(1)).

(b) Discrimination on the basis of political affiliation, race, color, sex, marital status, age or handicapping condition is prohibited and due regard must be given to rights of privacy and constitutional rights (§ 2301(b)(2)).

(c) Appropriate incentives and recognition are to be provided for excellence of performance (§ 2301(b)(3)).

(d) Employees are to be retained on the basis of the adequacy of their performance, inadequate performance should be corrected, and employees should be separated who cannot or will not improve their performance to meet required standards (§ 2301(b)(6)).

(e) Employees should be provided effective education and training in cases in which such education and training would result in better organizational and individual performance (§ 2301(b)(7)).

(f) Employees must be protected against reprisal for "whistle-blowing" within an agency (§ 2301(b)(9)).

In § 2302 are listed specific "prohibited personnel practices." Employees with authority are prohibited, *inter alia*, from discriminating for or against employees on enumerated grounds, coercing political activity, defining the requirements of a position for the purpose of improving or injuring a particular person, engaging in nepotism, taking or failing to take a personnel action for purposes of reprisal, and finally,

---

**5.** For convenience, the sections will be identified by these names or cited as codified in Title 5 (Supp. III 1979): Chapter 23 is § 2301, *et seq.*; Chapter 43 is § 4301, *et seq.*; Chapter 75 is § 7501 *et seq.*; and Chapter 77 is § 7701, *et seq.*

are subject to a broad prohibition which has been relied on in some of the decisions which will be discussed (§ 2302(b)(11)):

> (11) take or fail to take any other personnel action if the taking of or failure to take such action violates any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in section 2301 of this title.

The taking of a prohibited personnel practice by a particular employee with authority may be the basis for disciplinary action against him by the Merit Systems Protection Board, a new adjudicatory body, upon investigation and recommendation of the Special Counsel. Further, as will be discerned from the discussion of Chapter 77, an employee against whom action has been taken is given an important defense where that action is tainted by a prohibited personnel practice.

### B.

#### Chapter 43

█ Chapter 43 amendments are sweeping and extensive. The old rating system which gave a single evaluation for an employee's overall performance (satisfactory/unsatisfactory/outstanding) was done away with. New Chapter 43 appraisals of performance are made more specific and, therefore, more meaningful. Agencies are required to develop and establish one or more appraisal systems for each category of position in the agency, establishing written performance standards for elements of such position together with a delineation of the "critical elements" for that type of position (§ 4302(b)).[6]

█ Agencies are encouraged to have employees participate in setting reasonable performance standards and delineating critical elements (§ 4302(a)(2)).[7] Agencies must communicate the performance stan-

dards and critical elements of positions to employees at the beginning of each evaluation period (§ 4320(b)(2)). An employee's performance appraisal must be ˻ased on the particular standards for his position (§ 4302(b)(3)). Unlike the old system, which utilized a single adjective rating for overall performance, each element of performance is evaluated separately (5 U.S.C. § 4303(b)(1)(A)(ii)). "Periodic appraisals" are required (§ 4302(a)(1)) and are generally expected to be made at least annually. Senate Report at 41, 1978 U.S.Code Cong. & Ad.News at 2763. *See* 5 C.F.R. § 430.204(e).

Section 4302(a) requires that performance ratings be used in connection with a wide variety of personnel actions. Specifically, § 4302(a)(3) directs an agency to:

> (3) use the results of performance appraisals *as a basis* for training, rewarding, reassigning, promoting, reducing in grade, retaining [in RIF's], and removing employees. [Emphasis and bracketed matter added.]

Only instances of "unacceptable performance" which occurred during the one-year period ending on the date of the notice of proposed removal or demotion may be considered in taking the action (§ 4303(c)(2)(A)).

To overcome the complexity of procedures under the old system whenever an agency attempted to use an "unsatisfactory" rating "as a basis for removal," agencies are now authorized by § 4303(a) to "reduce in grade or remove an employee for *unacceptable performance*," (emphasis added) and appeals from such actions may be taken directly to the MSPB pursuant to § 4303(e). Concomitantly, Chapter 75 was amended to provide specifically (§ 7512(D)) that Chapter 75 does not apply to a "reduction in grade or removal under section 4303." Thus, the two stage review under

---

**6.** OPM approval of an agency's performance appraisal *system* is required (§ 4304(b)(1)). However, it is important to know that "such approval does not involve OPM review of the performance elements and standards established for each position." *See Siegelman v. HUD,* 13 MSPB 27, 14 M.S.P.R. —— (1983).

**7.** In the absence of a removal or reduction-in-grade action, however, no basis appears in the CSRA for a challenge to a standard. *See Alford v. HEW,* 1 MSPB 305, 1 M.S.P.R. 317 (1980).

the old system—first under Chapter 43 to establish the validity of the *rating,* and then under Chapter 75 as an adverse action "for cause"—was disassembled.

It is important to emphasize at this point that the statutory term "unacceptable performance" in Chapter 43 is not a synonym for generally poor performance or inefficiency. "Unacceptable performance" is one of only three terms Congress found appropriate to define in Chapter 43—the other two being "agency" and "employee" which determine applicability. "Unacceptable performance" is a word of art specifically defined in § 4301(3) as follows:

> (3) "unacceptable performance" means performance of an employee which fails to meet established performance standards in *one or more critical elements* of such employee's position. [Emphasis added.]

The term "critical element" must also be understood as not meaning simply an important element of a job or position. As defined in the implementing regulations:

> "Critical element" means a component of a job consisting of one or more duties and responsibilities which contributes toward accomplishing organizational goals and objectives and which is of such importance that "Unacceptable" performance on the element would result in "Unacceptable" performance of assigned work.

5 C.F.R. § 430.203.

As further explained in the *Federal Personnel Manual,* at 430–3 (1980), denominating an element "critical" means that "performance below the minimum standard [in a 'critical element'] *requires* remedial action and *denial* of a within-grade increase, and may be the basis for removing or reducing the grade level of that employee. Such action may be taken without regard to performance on other components of the job."

Chapter 43 sets up a removal or demotion system on a different basis from and independent of Chapter 75:

> Section 4303(a) imposes a new standard. It is "performance which fails to meet established requirements in one or more critical elements of the job." The Committee intends that this new standard should not be governed by the existing case law defining the present standard, "such cause as will promote the efficiency of the service."

Senate Report at 43, 1978 U.S.Code Cong. & Ad.News at 2765.

■ Thus, once an agency has set up an approved performance appraisal system, has communicated the written performance standards and "critical elements" of an employee's position to the employee at the beginning of the appraisal period, has warned of inadequacies in "critical elements" during the appraisal period, and has counseled and afforded an opportunity for improvement after proper notice, an agency may reduce in grade or remove an employee for receiving a rating of "unacceptable" *with respect to even a single* "critical element." No more is required of the agency; that is, a removal or demotion on the basis of an "unacceptable performance" *rating* on a "critical element" is not subject to any of the substantive or procedural requirements of Chapter 75.

■ Under Chapter 77, a Chapter 43 action is reviewable by the MSPB under the "substantial evidence" standard (§ 7701(c)). A Chapter 43 action is, thus, more narrowly reviewable by the board than a Chapter 75 case in which an agency must establish the facts underlying an adverse action by a preponderance of the evidence. Further, the agency need not prove that there is a nexus between the charge and the efficiency of the service, or that removal or demotion is an appropriate penalty.

Finally, it should be noted that the statute authorizes only the sanctions of removal or reduction in grade on the basis of "unacceptable performance." Lesser sanctions, such as suspensions, are not authorized (§ 4303(a)).

## C.

### Chapter 75 Amendments

Chapter 75 was revised to spell out with greater particularity the procedural rights

of employees when action is taken thereunder. The minimum rights to which an employee is entitled are set out in § 7513(b), which need not be discussed here.[8]

Chapter 75 was unamended, however, with respect to authorizing adverse actions against employees "for such cause as will promote the efficiency of the service" (§ 7513(a)).

§ 7512 sets out the scope of the cases which fall under Chapter 75:

§ 7512. *Actions covered.*

This subchapter applies to—

(1) a removal;

(2) a suspension for more than 14 days;

(3) a reduction in grade;

(4) a reduction in pay; and

(5) a furlough of 30 days or less; but does not apply to—

(A) a suspension or removal under section 7532 of this title,

(B) a reduction-in-force action under section 3502 of this title,

(C) the reduction in grade of a supervisor or manager who has not completed the probationary period under section 3321(a)(2) of this title if such reduction is to the grade held immediately before becoming such a supervisor or manager,

(D) a reduction in grade or removal under section 4303 of this title, or

(E) an action initiated under section 1206 or 7521 of this title.

Subsection D of § 7512 makes Chapter 75 not applicable to Chapter 43, a necessary provision to negate pre-1978 judicial precedent, and, thereby, make Chapter 43 independently operative. However, no provision in the CSRA tells us whether Chapter 43 does or does not negate or limit the previously recognized scope of Chapter 75.

With respect to that question, which is central to the issue raised by the MSPB, no *specific indication* of the intended effect of the new authority for taking action under Chapter 43 on the types of disciplinary actions to be taken under Chapter 75 appears in the legislative history. The legislative history advises, at best ambiguously, that Chapter 75 governs any action against an employee "where the basis for the agency action is *misconduct or any other cause besides unacceptable performance.* Actions based on *unacceptable performance* are governed by chapter 43." (Emphasis added.) Senate Report at 46, 1978 U.S.Code Cong. & Ad.News at 2768.

Consideration was given to, but no amendment was made in, the heavy burden of proof imposed on an agency in proceeding under Chapter 75. *See* H.R.Conf.Rep., 95th Cong., 2d Sess. 138-39, 1978 U.S.Code Cong. & Ad.News 2860, 2872 (Conference Report). Nor were the judicially imposed requirements for proof of a nexus between the basis for the adverse action and the efficiency of the service, or for consideration of the appropriateness of the penalty, or for consideration of mitigation of the penalty in light of personal factors, eliminated or alleviated.

### D.

### *Chapter 77*

Chapter 77 relates to appeals to the MSPB and judicial review and covers, *inter alia*, appeals under Chapter 43 and Chapter 75. Again we will forego delineating the myriad provisions here. Those in § 7701(c), pertaining to MSPB review of agency action, however, are significant to our subsequent analysis:

(c)(1) Subject to paragraph (2) of this subsection, the decision of the agency shall be sustained under subsection (b) only if the agency's decision—

(A) in the case of an action based on unacceptable performance described in section 4303 of this title, is supported by substantial evidence, or

(B) in any other case, is supported by a preponderance of the evidence.

---

**8.** The older procedures were upheld as satisfying due process in *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).

(2) Notwithstanding paragraph (1), the agency's decision may not be sustained under subsection (b) of this section if the employee or applicant for employment—

(A) shows harmful error in the application of the agency's procedures in arriving at such decision;

(B) shows that the decision was based on any prohibited personnel practice described in section 2302(b) of this title; or

(C) shows that the decision was not in accordance with law.

As seen above, § 7701(c)(1)(A) and (B) spell out the respective burden of proof requirements for Chapters 43 and 75.

A major substantive change appears in § 7701(c)(2)(B), which specifically implements the merit principles discussed in connection with Chapter 23. Nothing comparable had existed in earlier statutes. If an employee can show that the agency decision was based on a "prohibited personnel practice," that decision cannot be sustained. Thus, an employee is given, by this provision, a significant new defense to Chapter 75 actions, as well as to all other actions appealable under Chapter 77.

### III.

*Prior Decisions Interpreting Chapters 43 and 75 under CSRA*

The CSRA was made effective 90 days after October 13, 1978, the date of its enactment. However, with respect to implementation of Chapter 43, the statute provided in § 4302(b) that "each performance appraisal system shall provide for":

(2) as soon as practicable, *but not later than October 1, 1981*, with respect to initial appraisal periods, and thereafter at the beginning of each following appraisal period, communicating to each employee the performance standards and the critical elements of the employee's position;

(3) evaluating each employee *during the appraisal period* on such standards. [Emphasis added.]

The reason for the grace period in implementing Chapter 43 is readily understandable. As explained by Vice Chair Poston, in a separate opinion in *Wells v. Harris*, 1 MSPB 199, 238, 1 M.S.P.R. 208, 250 (1979):

As the reform legislation progressed through Congress, it became apparent to a number of us that it would be impossible for the snail-like Federal bureaucracy to change overnight from the adjective performance rating system then in place, to the new performance standard/critical element system. Therefore, Congress provided that the requirement for a full performance appraisal system of proposed 5 U.S.C. § 4302 be postponed until 1981. In retrospect, the amendment designed to adopt this postponement was inadequately drawn....

Two things, at least, seem clear from § 4302(b)(2) itself with respect to the significance of the October 1, 1981 date. An agency was encouraged to have its new appraisal system approved and operative as soon as possible before October 1, 1981, and that October 1, 1981, was the deadline for advising employees of the new standards and for beginning to make appraisals on *future* performance on that basis.

Following enactment of the CSRA, OPM issued regulations authorizing agencies to take actions under Chapter 43 once the agency had a new critical elements type evaluation system in place, even though not yet approved by OPM. In the *Wells* case, these regulations had been utilized for a removal action. The MSPB held that an agency could not remove an employee under Chapter 43 until its performance appraisal system received OPM approval. For an agency to attempt removal for "unacceptable performance" under Chapter 43 without an approved performance appraisal system was held to constitute "a prohibited personnel practice under § 2302(b)(11)." *Wells*, 1 MSPB at 230, 1 M.S.P.R. at 242. Thus, OPM's regulations, which authorized agencies to take actions under Chapter 43 during the interim between the effective date of the statute and the date of the approval of its proposed performance appraisal system, were held invalid and ac-

tions by agencies pursuant thereto could not be sustained under Chapter 43.

*Wells* also held, however, that removals and demotions for performance-based reasons could continue, as before, under Chapter 75. After a review of the "sparse" legislative history, the MSPB rejected the argument that Congress intended that Chapter 75 no longer apply to performance-based actions at all. Rather, statements in the history merely indicated to the *Wells* board members that Chapter 75 did not apply to "unacceptable performance" removals, using the term as a word of art.

Specifically, the MSPB stated:

Reading these two sections [from Chapters 43 and 75] together, it is apparent that as used in both sections the term "unacceptable performance" is the term of art which is defined at § 4301. It is not a general term covering all types of poor performance. As we have ruled, if the process of Chapter 43 is not followed, "unacceptable performance" cannot be demonstrated. However if a determination of inadequate performance is not made under a performance appraisal system provided for in Chapter 43, then it may be processed as a Chapter 75 action.

\* \* \* \* \* \*

Whichever action an agency chooses to pursue, it will have to comply with the procedural requirements of that Chapter. If an agency sees some advantage in pursuing performance-based action under Chapter 75, it is not inconsistent with the Act so long as the agency meets the higher burden of proof—and the more difficult standard of demonstrating that the action will promote "efficiency of the service." There is not the slightest evidence in the legislative history to suggest that Chapter 43 was ever to be a refuge for employees to escape Chapter 75. Chapter 43 originated as a relief

measure for agencies and it was enacted for that purpose.

*Id.* at 235–36, 1 M.S.P.R. at 248–250.

Thus, after *Wells*, deficiencies in performance continued to afford a basis for establishing "such cause as will promote the efficiency of the service." The continued use of Chapter 75 for removals for performance-based reasons was specifically approved by this court, which also independently reviewed the legislative history and precedent of other courts in reaching this decision. *Kochanny v. Bureau of Alcohol, Tobacco & Firearms,* 694 F.2d 698 (Fed. Cir.1982). *See also Turnage v. United States,* 230 Ct.Cl. 799, 800 (1982) (Chapters 43 and 75 characterized as "two different mutually exclusive procedural routes for disciplining employees on the basis of unsatisfactory job performance.")

In *Gende v. Department of Justice,* 23 M.S.P.R. 604 (1984), the MSPB had before it a demotion action effective January 11, 1984. The agency had relied on Chapter 75 in demoting the employee on charges of careless workmanship and failure to follow agency policy and the National Electric Code, which allegedly resulted in a $4,000 loss to the agency. Petitioner Gende argued that the demotion was improper in that the agency had failed to follow certain Chapter 43 procedures, particularly, the requirement under Chapter 43 that an employee must be afforded an opportunity to improve before taking action. The presiding official upheld the demotion on the basis of the *Wells* decision, which he understood to hold that an agency may elect to bring a performance-based action under either Chapter 75 or Chapter 43. Thus, the *specific procedures* required under Chapter 43 were irrelevant. The MSPB accepted a petition for review recognizing that the board and several courts had interpreted the statute as providing agencies with an *option* to pursue performance-based actions under either Chapter 43 or Chapter 75.[9]

**9.** *See, e.g., Hatcher v. Dept. of Air Force,* 705 F.2d 1309 (11th Cir.1983); *Debose v. Dept. of Agriculture,* 700 F.2d 1262 (9th Cir.1983); *Kochanny v. Bureau of Alcohol, Tobacco & Firearms,* 694

F.2d 698, 701 (Fed.Cir.1982); *Darby v. I.R.S.,* 672 F.2d 192, 195 (D.C.Cir.1982); *Young v. Dept. of Navy,* 7 MSPB 7, 7 M.S.P.R. 73 (1981).

In *Gende,* the MSPB concluded that the precedent of this court in *Kochanny* and *Turnage* could be limited to performance-based actions taken during the change-over period since the court had no need in those appeals to address the exclusive application of Chapter 43 procedures for performance-based actions effected after October 1, 1981.

The MSPB then undertook to re-probe the congressional intent. While finding that "a review of the legislative history of the Reform Act [CSRA] indicates that Congress did not expressly state whether, in enacting Chapter 43, it was thereby prohibiting the use of Chapter 75 to effect performance-based actions," this time, contrary to *Wells,* it saw "persuasive indications" that Chapter 43 was intended to be the exclusive means to effect performance-based removals and demotions. Briefly, the indications relied on were references in the Senate Report to:

1. The aim of simplifying and expediting procedures.

2. Defects in old evaluation procedures.

3. Inordinate procedural requirements and unreasonable standards under Chapter 75.

4. Use of the revised performance appraisal system "as a basis for developing, rewarding, reassigning, demoting, promoting, retaining [in RIF], and removing employees."

5. Establishment of new procedures for actions based on unacceptable performance.

The MSPB perceived Congress's concern for employees to be protected from actions on "ad hoc" performance standards developed at the unreviewed discretion of agencies. It believed removal on the basis of such standards would be inconsistent with Congressional intent.

The MSPB also saw the Conference Report's discussion of the lesser burden of proof in "performance cases" vis-a-vis "misconduct cases" as an indication that this lesser burden should apply in all performance-based cases, which meant that all such cases would have to be treated as Chapter 43 cases. It also concluded that "unacceptable performance" was used interchangeably with "performance cases" in that Report and not as a word of art.[10]

Turning to the statute itself, the MSPB relied on the interpretative guide *expressio unius est exclusio alterius* and found it applicable to the relationship between Chapter 43 and Chapter 75. Since Chapter 75 did not apply to Chapter 43 actions and Chapter 43 provided specifically for removal and demotion for "unacceptable performance," it must follow, per the board, that Chapter 75 could no longer be used for performance-based actions. The board found the chapters otherwise impossible to reconcile.

From this analysis, the board reached the following conclusion:

> In sum, the Board holds that Congress intended agencies to utilize Chapter 43 as the exclusive procedure for performance-based actions effected after October 1, 1981. We further hold that, in light of this Congressional intent, § 7513 provides no authority for agencies to effect such actions after October 1, 1981.

23 M.S.P.R. at 614–15. To the extent that a different interpretation had been espoused in *Wells,* it was so modified.

---

10. The Conference Report is short on this point, and the portion which purportedly makes such usage is quoted below. The House had proposed a "preponderance of the evidence" burden in all cases. The Senate had proposed in "unacceptable performance" cases that the agency's decision must be upheld unless "there is no reasonable basis for the decision." The conferees agreed:

> that in performance cases a lower standard of proof should be required because of the difficulty of proving that an employee's performance is unacceptable. The conference substitute therefore provides that an agency's decision in performance cases shall be upheld if its action is supported by substantial evidence in the record before the MSPB. The substantial evidence test was adopted both because it is clearly a lower standard than now used in performance cases and because it is a generally understood term in administrative law.

*See* Conference Report at 139, 1978 U.S.Cong. & Ad.News at 2872.

The board then went on to recognize exceptions to this basic rule. Where a removal was based on performance and non-performance (i.e., misconduct) factors, Chapter 75 would apply. It reserved judgment on which section should be used where the board does not sustain the misconduct charge or where an employee alleges bad faith in the agency's putting forth the misconduct charge in order to bring the action under Chapter 75.

A second exception was recognized where agencies and employees do not fall within Chapter 43 as provided in § 4301(1) and (2). Such performance-based cases could only be brought under Chapter 75.

It also identified two other possible exceptions: (1) cases charging insubordination even though involving an employee's refusal to perform his duties, although such actions could be brought under Chapter 43 if the agency relies solely on failure to meet performance standards; and (2) cases where there would be a substantial likelihood that delay in removal for the purpose of allowing time for improvement would result in injury, death, breach of security, or great monetary loss.

The MSPB then formulated standards for determining what actions are solely based on failure of performance. Since these "standards" will be referred to in our analysis, we quote them in their entirety (23 M.S.P.R. at 616–17):

[T]he Board will presume that a performance-based Chapter 75 action effected after October 1, 1981, is void *ab initio* unless the agency shows, by preponderant evidence, that: (1) the action is based solely on misconduct rather than performance or, as noted above, on both; or (2) the action is excluded or excepted from the rule, as described in Part II; or (3) that the action should otherwise be excepted from the rule based on public policy or other considerations.

In determining whether Chapter 75 actions are based on performance or misconduct, the Board will utilize two standards. First, the Board will presume, subject to agency rebuttal by preponder-

ance evidence, that charges which directly relate to an appellant's critical or non-critical elements [18] or performance standards are performance-based, irrespective of whether the agency is able to frame the charges in terms of misconduct. Since many violations of performance standards can easily be characterized as misconduct, no purpose would be served by adopting a standard that attempts to distinguish performance and misconduct actions based solely on the agency's characterization of the charges.

A second standard the Board will utilize to determine whether Chapter 75 actions are based on performance or misconduct may be stated as follows: The Board will also presume, subject to agency rebuttal by preponderant evidence, that charges which directly relate to the appellant's duties and responsibilities, or work-related tasks, functions, and objectives, as shown in the employee's position description or by other relevant evidence, are performance-based, and may not, therefore, be taken under § 7513. [Footnotes omitted.]

The MSPB acknowledged, in note 18 appended to the above quotation, that:

One consequence of the Board's ruling in this decision and of the application of this standard is that agencies may not take any removal or demotion actions based on an employee's non-critical elements. Such performance-based actions are not available under Chapter 75 and are not included in § 4303 since § 4303 actions must be based on a failure to meet critical elements. 5 U.S.C. § 4303(b)(1)(A)(ii). In such cases, however, if the agency were to reassign the employee, any such reassignment would not be appealable to the Board under Chapter 43. *See* 5 U.S.C. §§ 4302(a)(3), (b)(6); 4303(e).

Finally, the MSPB announced that its "new rule of law" would be given a partially prospective application. With respect to pending cases or actions taken within 30 days of its *Gende* decision, the MSPB proposed to allow the agency to elect to have

the action reconsidered as a Chapter 43 action, in which event certain new evidence and arguments would be received. The agency would also be permitted to show that the action was not performance-based (e.g., that the poor performance was willful) or that it fell within one of the exceptions which the MSPB recognized.

In its role as intervenor, the MSPB urges us to uphold *Gende* and to affirm that Chapter 43 is "the exclusive procedure for performance-based actions after October 1, 1981." 23 M.S.P.R. at 614.

## IV.

We are faced here with the question, as framed by the MSPB and petitioner: Does Chapter 43 provide the exclusive procedures for performance-based actions by an agency?

## V.

### *Interrelationship of Chapters 23, 43, 75, and 77*

▮ We begin with acknowledgement that deference is appropriately given to the MSPB's interpretation of the CSRA. Congress has vested the MSPB with substantial responsibility for enforcing the Act. Moreover, it has rendered a thorough and perceptive opinion in *Gende*. However, there can also be no question that *Gende* modifies *Wells* and departs from the analysis of *Turnage* and *Kochanny*, precedent of this court to which it must defer. Moreover, *Wells* generated a number of board decisions which the MSPB acknowledges were inconsistent. Because of these factors, particularly the MSPB's own change in its perception of the statute, deference is not due to the extent it would ordinarily be given had the MSPB maintained a consistent position over the years. *F.E.C. v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 37, 102 S.Ct. 38, 44, 70 L.Ed.2d 23 (1981); *Securities and Exchange Commission v. Sloan*, 436 U.S. 103, 117, 98 S.Ct. 1702, 1711, 56 L.Ed.2d 148 (1978); and *Federal Maritime Commission v. Seatrain Lines, Inc.*, 411

U.S. 726, 745, 93 S.Ct. 1773, 1784, 36 L.Ed.2d 620 (1973).

In *Gende*, the laudable objective of the MSPB was to interpret the statute in a manner which would give effect to merit principles, an objective clearly intended by Congress. In order to tie merit principles to performance-based actions, the MSPB believed it was necessary to eliminate use of Chapter 75 totally in connection with performance-based actions against employees. Thus, the MSPB read into Chapter 75 a limitation which Congress expressed nowhere in the statute itself or in the legislative history. It is a limitation of sweeping proportions, given the judicial interpretations of the prior statute holding that Chapter 75 applied to performance-based actions and was not affected by the procedures of Chapter 43. If Congress intended such a major change, one would expect a clear statutory provision or at least a single specific statement by Congress to the effect that Chapter 75, henceforth, could not be used for performance-based adverse actions. *St. Paul Fire & Marine Insurance Co. v. Barry*, 438 U.S. 531, 550, 98 S.Ct. 2923, 2934, 57 L.Ed.2d 932 (1978). In § 7512(D) Congress took pains to prevent Chapter 75 from being extended to embrace the newly created actions for removal or reduction-in-grade based on "unacceptable performance" as defined in Chapter 43. To construe § 7512(D) as a provision which also eliminates prior coverage of Chapter 75 would require strong indications that Congress intended such an interpretation. *Securities and Exchange Commission v. Sloan*, 436 U.S. at 122, 98 S.Ct. at 1713. Yet, our scrutiny of the legislative history has been as unrevealing of such an expressed intent as that of the MSPB.

▮ We are in complete agreement with the MSPB that Congress intended that merit principles must be adhered to by agencies in all performance-based actions. However, it is not necessary to read the *Gende* limitation into the statute in order to accomplish that objective. As will be discussed below, a *literal reading of the*

*statute* fully implements congressional intent in that respect. Thus, the basis for the MSPB's interpretation is fatally flawed. Congress itself designed a statutory framework which implements merit principles in connection with Chapter 75 actions. Regardless of the worthiness of its devised procedures, the MSPB is without authority to change the statutory design. *Heckler v. Turner,* —— U.S. ——, 105 S.Ct. 1138, 1153, 84 L.Ed.2d 138 (1985); *Southeastern Community College v. Davis,* 442 U.S. 397, 412, 99 S.Ct. 2361, 2370, 60 L.Ed.2d 980 (1979); *Markham v. Cabell,* 326 U.S. 404, 410 (1945).

■ As a matter of initial impression, the procedural complexity which would be created by endorsement of the *Gende* decision appears in itself to violate the merit principles espoused by Congress. From the viewpoint of the public, the court would be approving a return to the technical complexities in disciplinary procedures which Congress characterized as "asphyxiating" of merit principles. The CSRA must be interpreted so as to give effect to Congress' expressed desire that the new statute serve the *public's interest* in seeing that employees who do not live up to the public trust can be efficiently removed and, at the same time, in requiring management to act for the right reasons.

■ The MSPB feared that agencies might attempt to use Chapter 75 in place of Chapter 43 to avoid the merit principles embodied in Chapter 43. However, in view of Chapter 77, Chapter 75 provides agencies with no escape route from merit principles. § 7701(c)(2)(B) provides that no adverse action may be sustained if the employee:

> shows that the decision was based on any prohibited personnel practice described in section 2302(b) of this title.

Under § 2302(b)(11) it is a prohibited personnel practices to violate the merit principles set out in § 2301(a). The following specific merit principles in § 2301(a) bear repeating here:

> (6) Employees should be retained on the basis of the adequacy of their per-

formance, inadequate performance should be corrected, and employees should be separated who cannot or will not improve their performance to meet required standards.

> (7) Employees should be provided effective education and training in cases in which such education and training would result in better organizational and individual performance.

It must be noted that these principles are not stated in the narrowly defined language of Chapter 43, that is, in terms of "unacceptable performance," but more broadly in terms of "inadequate performance." Thus, the statute, as written, ties an agency which elects to proceed under Chapter 75 to the same merit principles which are stated with more specificity, in some respects, more narrowly, in Chapter 43. Violation of merit principles has been made a specific defense to adverse actions under Chapter 75. Moreover, that defense is a substantive one, not merely procedural.

Providing employees with the *defense* of a prohibited personnel practice to a Chapter 75 action, rather than requiring an agency, as *Gende* holds, to show that it has chosen the right chapter under which to proceed, may not be the most favorable position for some employees. Nevertheless, a literal reading of the statute leads to this statutory structure. Further, we are unpersuaded that we can depart from that literal reading simply on arguments that Chapter 43 is more protective of employees' rights. *See Heckler v. Turner,* 105 S.Ct. at 1153. The somewhat greater burden on the employee under Chapter 75 in this respect is balanced by the greater burden on the agency under Chapter 75. Importantly, from the viewpoint of the *public,* the time-consuming and expensive effort, by the MSPB and by this court, in resolving preliminary skirmishes is entirely eliminated. Once brought, a case can proceed to resolution on the merits—not delayed by technicalities. Further, the employee suffers no loss of the substantive rights given in Chapter 23.

These substantive rights are not and should not be inextricably intertwined with the Chapter 43 appraisal procedures.[11] The methods and criteria of performance evaluation are a developing science or art. A reading of Chapter 430 of the Federal Personnel Manual, which provides guidance to agencies, discloses that performance evaluation by pre-set standards is in its infancy of development. Some agencies no doubt are better at it than others—particularly in this early stage of implementation. Some systems are better than others. Some positions are extremely difficult to fit into a standards pattern at all, e.g., a research scientist. Exceptions may have to be permitted to coverage of such positions. Some agencies may detail many critical elements in each position. Others few. Evaluation may be by one manager or several managers, with or without input by peer groups.

■ Agencies have been given great flexibility in the structure of appraisal systems in these respects in order to be able to experiment and develop a system or systems that meet their particular needs. They are encouraged by the Federal Personnel Manual to constantly review position standards and evaluation methods and to change as appropriate. (FPM at 430–A–6). As we are beginning to see in appeals of removals under Chapter 43, such review is necessary. The performance appraisal systems being utilized by agencies have not approached the level of perfection, either in defining performance standards or in the critical elements of individual positions or in evaluation techniques. Mistakes are made in setting criteria. Aspects of performance which are important to the job may not appear in the written statement of standards; others may be denominated "critical" which should not be. When such mistakes are made by the agency, the "easy" route of Chapter 43 must be denied. An employee sought to be removed under

Chapter 43 is entitled to be rated on reasonable standards and to have the specific procedures of Chapter 43 applied in connection with those standards. This protection is the *quid pro quo* for the lesser burdens on the agency under that chapter. However, nothing in the statute or legislative history indicates that an employee should thereby be entitled to his position despite serious performance deficiencies where an agency can meet the heavy burdens of Chapter 75 and can show substantive compliance with merit principles.

■ The normal assumption, where Congress amends one part of a law leaving another part unchanged, is that "the two were designed to function as parts of an integrated whole" and each should be given "as full a play as possible." *Markham v. Cabell*, 326 U.S. 404, 411, 66 S.Ct. 193, 196, 90 L.Ed. 165 (1945). The CSRA left the substantive ground for removal "for cause" in Chapter 75 unchanged. It is elementary that repeals by implication are not favored and are permitted only to the extent of clear repugnancy. *Georgia v. Pennsylvania Railroad Co.*, 324 U.S. 439, 456–57, 65 S.Ct. 716, 725–726, 89 L.Ed. 1051 (1945). Neither chapter in the statute before us is without function nor meaningless in light of the other. They function well as alternative procedures. The significant change affecting Chapter 75 cases is not found in Chapter 43, but rather in Chapters 23 and 77, under which violations of merit principles are made a *defense*. It would, for example, be inconsistent with the merit principles set out in § 2301(b)(6) and (7) for an agency to bring an action "for cause" under Chapter 75 based solely on performance that is governed by and meets the critical elements set forth for the employee's position. An agency may not circumvent Chapter 43 by charging that an employee should have performed better than the standards communicated to him in accordance with Chapter 43.

11. *Accord, Hatcher v. Dept. of Air Force,* 705 F.2d 1309, 1313 (11th Cir.1983):
Holding as we do that Chapter 43 does not provide the exclusive procedure for perform-

ance related removals, it would be incongruous to read into the Chapter 75 procedure the distinguishing features of Chapter 43 "unacceptable performance" removal procedures.

In view of the extraordinarily broad discretion of agencies in setting evaluation systems, the continued viability of removal "for cause" under Chapter 75 for performance-based reasons is appropriate, considering the government workforce as a whole. All federal employees should be subject to some degree to a uniform disciplinary system so that some employees are not able wholly to escape the consequences of poor performance for technical procedural reasons. As Congress recognized, "[t]he morale of even the best motivated employee is bound to suffer under such a system." Senate Report at 3, 1978 U.S.Code & Cong. & Ad.News at 2725. Chapter 75 provides that all-encompassing umbrella. To make Chapter 43 the exclusive remedy would make each agency a law unto itself.

■ We also see nothing in the statute to prevent the agency from bringing a mixed case, for example, relying on Chapter 43 for "unacceptable performance" in a critical element with an alternative, or additional charge, under Chapter 75 for "such cause as will promote the efficiency of the service." In such cases, the appropriate standard of review by MSPB should be applied according to the basis for each specific charge. Adjudicative bodies routinely deal with more than one standard in cases brought before them.

One further consideration in construing Chapter 75 to include performance-based cases is that agencies will continue to be able to discipline employees with lesser sanctions for poor performance than removal or demotion, the only sanctions authorized in Chapter 43. If Congress intended to eliminate lesser penalties in all performance-related cases, again we would expect some indication to that effect by Congress.

Finally, subsequent action by Congress confirms our analysis of the scope of Chapter 75. As indicated, the *Gende* decision limits the "such cause" ground of § 7513(a) to "misconduct" and "malfeasance" in performance. However, it is apparent from a later amendment that Congress knows how to write that type of limitation into Chapter

75 when it wishes to do so. In connection with employees in the Senior Executive Service (SES) who are covered separately in Chapter 75 (§§ 7541–7543), the CSRA originally provided in § 7543(a) for action against an SES employee "only for such cause as will promote the efficiency of the service." In 1981, that section was specifically amended to provide for actions "only for misconduct, neglect of duty, or malfeasance." The latter basis is, in essence, the limitation which the MSPB seeks to read into § 7513(a) by implication. As with § 7543(a), we conclude that a change in § 7513(a) to effect such limitation must be left to Congress.

■ Thus, while we are in substantial agreement with the MSPB that merit principles must be applied in all performance-based actions, we differ with respect to statutory procedures. We do not read Chapter 43 as implicitly *eliminating* removal or demotion actions for performance reasons under Chapter 75.

Returning to the present appeal, we reject the MSPB's request for remand of this case for reconsideration under Chapter 43. Chapter 75 remains available for performance-based adverse actions, and petitioner's case, therefore, was properly treated as a Chapter 75 removal case.

## VI.

### *Merits*

On the merits of his appeal, petitioner contends that his removal was improper in that:

(1) the agency failed to prove its charge of unsatisfactory performance;

(2) the removal was in reprisal for his "whistleblowing" activities, i.e., his reporting of security violations;

(3) he was denied procedural due process by the MSPB;

(4) the agency committed harmful procedural error in effecting his removal; and

(5) the agency action was taken before OPM had rendered a decision on an agency-

initiated disability retirement application, in violation of 5 C.F.R. § 831.1206.

### Proof of Charge

Petitioner contends that the agency failed to prove its charge of unsatisfactory performance by a preponderance of the evidence. In removal actions under Chapter 75, preponderance of evidence is the agency's burden of proof before the MSPB. 5 U.S.C. § 7701(c)(1)(B). *See* Part II D, *supra.* However, under 5 U.S.C. § 7703(c)(3), our review is under the substantial evidence standard, regardless of whether the action originates under Chapter 43 or Chapter 75.

■ The agency presented abundant documentary and testimonial evidence indicating that petitioner's work was deficient, including, *inter alia,* three written performance evaluations: a June 17, 1981 Performance Evaluation, an October 1, 1981 Performance Evaluation, and an August 25, 1981 "Joint Investigation Report." The latter evaluation is particularly significant as it was prepared jointly by a member of agency management *and* a member of petitioner's union, in accordance with the union agreement. It concludes that petitioner's work product was unsatisfactory, poorly organized and written, and difficult to understand. Though petitioner emphatically denies that his work was unsatisfactory, the evidence presented by the agency supporting such charge is overwhelming. In sum, the record clearly contains substantial evidence to support the charge, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938).

■ Petitioner also argues that certain evidence considered by the agency and the board should have been disregarded since it concerns work performance occurring prior to one year preceding his proposed removal. Petitioner also faults the agency for failing to introduce any evidence of "critical element" performance deficiencies. However, in accordance with our previous analysis, the agency action here was properly taken under Chapter 75,[12] and the procedural prerequisites of a Chapter 43 action referenced by petitioner are, thus, inapplicable.

### Reprisal

■ Petitioner also argues that his removal was instituted in reprisal for his reporting of security violations. As petitioner acknowledges, it is extremely difficult to prove a case of retaliation. The presiding official fully considered the supporting testimony of Mr. Richard S. Day, Security Specialist, petitioner's only corroborating witness, but discounted such testimony based on Day's admission on cross-examination that he was unhappy with management (and, thus, appeared likely to be biased in petitioner's favor) and on the observation that Day's testimony was at times "evasive and non-responsive." Determinations of credibility are within the exclusive province of the factfinder, and we will not attempt to second-guess the presiding official, who was present at the hearing and observed first-hand the demeanor of the witness. *Hagmeyer v. Department of the Treasury,* 757 F.2d 1281, 1284 (Fed.Cir. 1985).

### Discovery and Conduct of Hearing by MSPB

Petitioner alleges that the presiding official improperly denied his request for subpoenas, admitted into the record evidence that was objected to and should have been excluded, and allowed the agency rebuttal testimony, while preventing petitioner from introducing surrebuttal evidence. We have carefully examined each assertion, but conclude that no legal error or abuse of discretion on the part of the presiding official has been established. 5 U.S.C. § 7703(c)(1).

---

**12.** We note, in particular, the notice of proposed removal which explicitly states, "You are hereby notified of a proposed action to terminate your employment with NSWSES *for the efficiency of the service...."* (Emphasis added.)

## Agency Procedural Error

 Petitioner contends that the agency's removal action was defective procedurally in its timing. The sequence of events leading to this removal and its appeal are as follows:

Oct. 21, 1981: Agency files disability retirement application with OPM and notified petitioner of such.

Oct. 29, 1981: Agency issues notice of proposed removal to petitioner.

Nov. 30, 1981: Removal of petitioner effected.

Dec. 10, 1981: Petitioner appeals removal to MSPB.

Jan. 8, 1982: Upon notification that OPM has approved disability retirement application, agency cancels removal and moves to dismiss petitioner's appeal.

Feb. 23, 1982: Petitioner's appeal to MSPB dismissed as moot.

July 23, 1982: Upon reconsideration requested by petitioner, OPM reverses its initial decision and disallows disability retirement application.

July 1, 1983: Upon request for reconsideration by agency, OPM adheres to disallowance and issues final decision of such.

Sept. 2, 1983: Agency notifies petitioner that, as a result of OPM's action, the removal action is reinstated retroactive to November 30, 1981.

Sept. 22, 1983: Petitioner appeals to MSPB.

Petitioner contends that the retroactive reinstatement of the removal action was procedurally improper. The presiding official considered this argument but determined that the agency acted properly and in good faith, relying on the vacillating position of OPM, and that petitioner had

suffered no harmful error as a result of the agency's action. We agree with the board that the agency took appropriate corrective action under the circumstances.

## Removal During Pendency of Retirement Application

 Petitioner, in his *reply brief* to this court, and at oral argument, attacks the removal and its retroactive reinstatement as a violation of 5 C.F.R. § 831.1206, which provides, in pertinent part, as follows:

> An agency shall retain an employee in an active duty status until it receives the initial decision of the Associate Director for Compensation on an agency application for disability retirement, except that the agency on the basis of medical evidence, may place an employee on leave with his/her consent, or without his/her consent when the circumstances are such that his/her retention in an active duty status may result in damage to Government property, or may be detrimental to the interests of the Government, or injurious to the employee, his/her fellow workers, or the general public.

Petitioner argues that the agency was obligated by this regulation to keep him on active duty status (or, presumably, on leave status, with or without his consent) until it had received at least the first determination by OPM on the disability retirement application.[13] Thus, per petitioner, the earliest date his removal could properly be effected was January 11, 1982.[14] If the removal was taken precipitously, petitioner, of course, would be entitled to back pay from the effective date of his removal, November 30, 1981, to the date the agency received notice of OPM's approval of the disability retirement application, January 8

---

13. Petitioner maintains that the agency was cognizant of this requirement as evidenced by the following statement contained in the agency's notification to him that it had initiated a disability retirement application:

> You will remain in an active duty status until an initial decision is received from the Associate Director for Compensation. During this period you may be placed in a leave status with or without your consent.

14. The exact date involved, January 8 or January 11, is unclear from the record. Agency correspondence indicates that the removal was cancelled on January 8 by issuance of an SF–50. However, the notice from OPM to the agency appears to have a received date stamp of January 11, the date upon which petitioner relies. This matter is appropriate for resolution, if necessary, on remand.

or 11, 1982. The propriety of the removal action itself, however, would be unaffected, since petitioner has demonstrated no harm (other than lost pay) resulting from the allegedly precipitous action.

The record before us does not indicate that this specific argument was raised below, so that it may properly be considered on appeal. *Haynes v. United States,* 418 F.2d 1380, 1382 (Ct.Cl.1969). The regulation at issue was not addressed by the presiding official in his decision; however the government makes no assertion that the argument is untimely. In any event, we decline to consider the issue *de novo,* and, therefore, remand for appropriate action by the board in light of the above discussion.

*Conclusion*

The decision of the MSPB affirming petitioner's removal under Chapter 75 is *affirmed.* The case is *remanded* to the MSPB for a determination of whether petitioner may assert entitlement to pay under 5 C.F.R. § 831.1206 and the amount thereof.

AFFIRMED AND REMANDED.

SKELTON, Senior Circuit Judge (with whom KASHIWA and BENNETT, Circuit Judges, MILLER, Senior Circuit Judge, and NEWMAN, Circuit Judge, join), dissenting.

I respectfully dissent. This is a very important case in which the MSPB has intervened, and one that should not be lightly considered. The case is important because the majority opinion deprives government employees in the competitive service of certain rights granted to them by Congress in 1978 when it amended Title 5 § 4303 (Chapter 43) governing removal proceedings by an agency against employees for unacceptable performance. These rights include, among others, entitlement to 30 days' advance written notice of the proposed action which identifies specific instances of unacceptable performance on which the action is based and the critical elements of the employee's position in-

volved in each instance of unacceptable performance, representation by an attorney or other representative, a reasonable time to answer orally and in writing, a decision within 30 days after the expiration of the notice period specifying the instances of unacceptable performance on which the removal is based, freedom from removal proceedings for unacceptable performances occurring more than one year prior to the date of the 30-day notice, an opportunity to improve the employee's performance, (*see* § 4302(b)(6)), and if improvement that is acceptable continues for one year from the date of the notice, all entries or notations of the removal proceedings shall be removed from his record, and, finally, freedom from removal on *ad hoc* rules and decisions of agencies, a practice Congress sought to eliminate by its amendment of § 4303 (Chapter 43).

These rights have been taken away from employees by the majority opinion in its holding that an agency may use Title 5 § 7512 (Chapter 75) proceedings to remove an employee for unacceptable performance instead of Chapter 43. Chapter 75 does not grant employees the above rights present in Chapter 43. As will be shown more fully below, this holding is contrary to, and violates, both Chapter 43 and Chapter 75. The decision also imposes an additional burden on agencies because in removal proceedings under Chapter 75 the agencies must prove the charges by the higher standard of preponderance of the evidence instead of the lesser standard of substantial evidence allowable under Chapter 43. *See* Title 5 § 7701(c)(1)(A) and (B). Accordingly, the majority opinion adversely affects both employees and agencies.

The majority opinion is in error when it holds that Chapter 75 (Title 5 § 7512) proceedings may be used in a performance-based action to remove an employee who is subject to removal under the provisions of Chapter 43 (Title 5 § 4303). This error is readily apparent to anyone who reads this statute, which provides as follows:

Title 5 § 4303 (Chapter 43):

§ 4303. Actions based on unacceptable performance

(a) Subject to the provisions of this section, an agency may reduce in grade or remove an employee for unacceptable performance.

(b)(1) An employee whose reduction in grade or removal is proposed under this section is entitled to—

(A) 30 days' advance written notice of the proposed action which identifies—

(i) specific instances of unacceptable performance by the employee on which the proposed action is based; and

(ii) the critical elements of the employee's position involved in each instance of unacceptable performance.

(B) be represented by an attorney or other representative;

(C) a reasonable time to answer orally and in writing; and

(D) a written decision which—

(i) in the case of a reduction in grade or removal under this section, specifies the instances of unacceptable performance by the employee on which the reduction in grade or removal is based, and

(ii) unless proposed by the head of the agency, has been concurred in by an employee who is in a higher position than the employee who proposed the action.

(2) An agency may, under regulations prescribed by the head of such agency, extend the notice period under subsection (b)(1)(A) of this section for not more than 30 days. An agency may extend the notice period for more than 30 days only in accordance with regulations issued by the Office of Personnel Management.

(c) The decision to retain, reduce in grade, or remove an employee—

(1) shall be made within 30 days after the date of expiration of the notice period, and

(2) in the case of a reduction in grade or removal, may be based only on those instances of unacceptable performance by the employee—

(A) which occurred during the 1-year period ending on the date of the notice under subsection (b)(1)(A) of this section in connection with the decision; and

(B) for which the notice and other requirements of this section are complied with.

(d) If, because of performance improvement by the employee during the notice period, the employee is not reduced in grade or removed, and the employee's performance continues to be acceptable for 1 year from the date of the advance written notice provided under subsection (b)(1)(A) of this section, any entry or other notation of the unacceptable performance for which the action was proposed under this section shall be removed from any agency record relating to the employee.

(e) Any employee who is a preference eligible or is in the competitive service and who has been reduced in grade or removed under this section is entitled to appeal the action to the Merit Systems Protection Board under section 7701 of this title.

(f) This section does not apply to—

(1) the reduction to the grade previously held of a supervisor or manager who has not completed the probationary period under section 3321(a)(2) of this title.

(2) the reduction in grade or removal of an employee in the competitive service who is serving a probationary or trial period under an initial appointment or who has not completed 1 year of current continuous employment under other than a temporary appointment limited to 1 year or less, or

(3) the reduction in grade or removal of an employee in the excepted service who has not completed 1 year of current continuous employment in the same or similar positions.

(As amended Pub.L. 95–454, Title II, § 203(a), Oct. 13, 1978, 92 Stat. 1133.)

Title 5, § 7512 (Chapter 75):

§ 7512. Actions covered

*This subchapter* applies to—

(1) a removal;

(2) a suspension for more than 14 days;

(3) a reduction in grade;

(4) a reduction in pay; and

(5) a furlough of 30 days or less; but *does not apply to*—

(A) a suspension or removal under section 7532 of this title,

(B) a reduction-in-force action under section 3502 of this title,

(C) the reduction in grade of a supervisor or manager who has not completed the probationary period under section 3321(a)(2) of this title if such reduction is to the grade held immediately before becoming such a supervisor or manager,

(D) *a reduction in grade or removal under section 4303 of this title*, or

(E) an action initiated under section 1206 or 7521 of this title.

Added Pub.L. 95-454, Title II, § 204(a), Oct. 13, 1978, 92 Stat. 1136. (Emph. Sup.)

Thus, it is clear that § 7512 (Chapter 75) states in plain, unambiguous, and unequivocal terms that it *does not apply* to a removal under § 4303 (Chapter 43). In fact, in the first part of the majority opinion it is stated that "subsection D of § 7512 makes Chapter 75 not applicable to Chapter 43." This is, of course, correct. The opinion also quotes correctly the legislative history of the two chapters as follows:

The legislative history advises simply that Chapter 75 governs any action against an employee 'where the basis for the agency action is misconduct or any other cause besides *unacceptable performance.* Actions based on *unacceptable performance* are governed by chapter 43.' (Emphasis added.) Senate Report at 46, 1978 U.S.Code Cong. & Ad.News at 2768.

The majority opinion also states that:

"The statute should be applied as written."

This is of course correct, but the majority opinion holds exactly opposite and contrary to the statute as written.

In view of the clear and specific mandates of the statute, as well as the above admissions and approvals of the majority as to their meaning, it is indeed astonishing that the majority concludes that, notwithstanding the prohibition in § 7512(D) (Chapter 75), proceedings under Chapter 75 *may be used* in Chapter 43 removal proceedings against an employee based on unacceptable performance. This conclusion is directly contrary to the statute, and no amount of circuitous reasoning, philosophical interpretation, discussion of previous and other legislation, nor the citation of prior cases that are no longer applicable, can change its unambiguous provisions.

Chapter 43 (§ 4303) governs actions to remove an employee for unacceptable performance, and Chapter 75 (§ 7512) provides specifically that it *does not apply* to a removal under § 4303. Yet, in the face of these provisions of the statute, and contrary to them, the majority holds:

"Chapter 75 remains available for performance-based actions."

It is obvious that this holding violates both sections of the statute.

In view of the foregoing and the discussion which follows, it must be said that the majority opinion cannot be sustained on any theory because it is contrary to the statute and, therefore, erroneous as a matter of law.

In the instant case Petitioner, Albert J. Lovshin, appeals from a decision of the Merit Systems Protection Board (MSPB or Board), Docket No. SF07528311046, approving the action of the Department of the Navy in separating him from his position at the Naval Ship Weapons Systems Engineering Station, Port Hueneme, California, for inefficiency and poor workmanship.

## BACKGROUND

Petitioner was an Electronics Engineer, GS–855–12, at the above Naval Station,

when on October 23, 1981, the Navy submitted to the Office of Personnel Management (OPM) an agency-initiated application for his disability retirement. Thereafter, on October 29, 1981, the Navy sent Petitioner a Notice of Proposed termination stating that the Navy intended to discharge him, effective November 30, 1981, for unsatisfactory performance of his assigned duties. Following this notice, Petitioner was separated from the service on November 30, 1981, before OPM acted on the disability application. Petitioner appealed the discharge to the Board on December 10, 1981. Thereafter, on January 6, 1982, OPM notified the Navy that it had approved the disability retirement. The Navy then placed Petitioner on disability retirement status, retroactive to November 30, 1981. The Navy then filed a motion with the Board to dismiss Petitioner's separation appeal, which was granted by the Board on February 23, 1982.

The Petitioner filed a motion with OPM for reconsideration of the agency-initiated application for disability retirement, and on July 23, 1982, OPM granted Petitioner's motion and reversed its previous decision by denying the disability retirement application. This denial was upheld by OPM on July 1, 1983, after the Navy asked for a further reconsideration. Whereupon, the Navy retroactively reinstated its original discharge of Petitioner for inefficiency, effective November 30, 1981.

The Petitioner then pursued his discharge appeal. A hearing was held and the presiding official of the Board held that the charges were proven by the Navy by a preponderance of the evidence, that the reinstatement of the November 30, 1981, separation-inefficiency action by the Navy was proper, and that Petitioner's separation was for such cause as will promote the efficiency of the service. The decision of the presiding official was approved by the Board. The Petitioner has appealed from that decision to this court.

The Petitioner was removed and separated from his position by proceedings conducted under the provisions of Chapter 75 of the Civil Service Reform Act of 1978, Pub.L. 95–454, 92 Stat. 1121, 5 U.S.C. § 7513 (the Act). Petitioner contends that if he was to be removed for poor performance, the proceedings had to be conducted by the Navy under and in accordance with Chapter 43 (5 U.S.C. § 4303) of the Act instead of Chapter 75. The Navy argues that it had an option to file the action on the performance-based charge under either Chapter 75 or Chapter 43. This is the main issue in the case.

As a preliminary matter, it should be pointed out that when Congress passed the Act it provided in § 4302 [1] that each agency should develop one or more performance appraisal systems to be approved by OPM by October 1, 1981. As events transpired many agencies failed to have such performance appraisal systems approved by OPM by said date. As a consequence, OPM issued interim regulations for the discharge of employees on performance-based charges under Chapter 43 of the Act. However, the Board held these regulations invalid in *Wells v. Harris*, 1 MSPB 199, 1 M.S.P.R. 208 (1979). The Board held further in that case that agencies could nevertheless maintain performance-based actions against employees under Chapter 75. A number of courts followed the *Wells* opinion in this regard and upheld the discharge of employees in such actions under Chapter 75 during the interim period before the agencies had an OPM-approved performance appraisal system in place. Some of these cases are *Kochanny v. Bureau of Alcohol, Tobacco & Firearms*, 694 F.2d 698 (Fed.Cir.1982); *Turnage v. U.S.*, 230 Ct.Cl. 799 (1982); *Hatcher v. Department of the Air Force*, 705 F.2d 1309, *rehearing denied*, 712 F.2d 1419 (11th Cir.1983); *Debose v. Department of Agriculture*, 700 F.2d 1262 (9th Cir.1983); *Darby v. Internal Revenue Service*, 672 F.2d 192 (D.C. Cir.1982); *Drew v. Department of the Navy*, 672 F.2d 197 (D.C.Cir.1982), *cert. denied*, 459 U.S. 1072, 103 S.Ct. 493, 74 L.Ed.2d 634 (1983).

---

**1.** The Sections of the Act referred to herein are those found in Title 5, U.S.C.

In *Wells,* the Board, at pages 235–236, reasoned:

However, if a determination of inadequate performance is not made under a performance appraisal system provided for in Chapter 43, then it may be processed as a Chapter 75 action.

Whichever action an agency chooses to pursue, it will have to comply with the procedural requirements of that Chapter. If an agency sees some advantage in pursuing [a] performance-based action under Chapter 75, it is not inconsistent with the Act so long as the agency meets the higher burden of proof—and the more difficult standard of demonstrating that the action will promote "efficiency of the service."

The following cases are in accord: *Kochanny,* 694 F.2d at 701, *Hatcher,* 705 F.2d at 1312; *Debose,* 700 F.2d at 1266; *Darby,* 692 F.2d at 196; *Drew,* 672 F.2d at 201.

In *Turnage,* the Court of Claims, at page 800, stated:

For present purposes, it is sufficient to state that the act established two different, mutually exclusive procedural routes for disciplining employees on the basis of unsatisfactory job performance. 5 U.S.C. § 752(d) (Supp. IV 1980)

.... Chapter 43 gives employees slightly more procedural protections, 5 U.S.C. § 4303, than does Chapter 75, 5 U.S.C. § 7513, but Chapter 43 actions are reviewed by the Board on a "substantial evidence" standard, while Chapter 75 actions must be supported by a preponderance of the evidence. 5 U.S.C. § 7701(c)(1). As a result, Chapter 43 removals are more easily sustained, as Congress intended.

The basis for the decisions in the above cases was the holding of the Board in the *Wells* case that an agency could proceed under either Chapter 75 or Chapter 43 in a performance-based action to remove an employee. However, on October 22, 1984, the Board in a well-reasoned and comprehen-sive opinion held in *Gende v. Department of Justice,* 23 M.S.P.R. 604 (1984), that after October 1, 1981, the exclusive procedure for bringing performance-based actions for the removal of an employee was Chapter 43 (§ 4303) and that after that date such an action could not be brought under Chapter 75 (§ 7513), subject to certain exceptions.[2] I agree with this decision of the Board for reasons that follow. The cases discussed above are not applicable to the case before us for at least three reasons. In the first place, the charges filed in those cases were agency actions initiated or begun *before* October 1, 1981, the required OPM approval date for agency performance appraisal systems, whereas, in *Gende* and in our case the actions were begun *after* October 1, 1981. In the second place, those cases followed the decision of the Board in *Wells* and, for all practical purposes, were limited to performance-based actions filed during the interim period before October 1, 1981. Finally, the Board modified *Wells* and held for the first time in *Gende* that such actions filed after October 1, 1981, must be filed under Chapter 43 and could not be filed under Chapter 75 unless they involved one of the exceptions mentioned by the Board in that case. This in banc court should hold that *Kochanny, Turnage* and similar cases cited above are no longer applicable to performance-based actions against employees filed after October 1, 1981.

A study of the legislative history of the Act clearly indicates that Congress intended that performance-based removal and demotion actions be effected exclusively under Chapter 43 procedures. One of the main purposes of the Act was to simplify and expedite procedures against employees whose work and performance was substandard. *See* S.Rep. No. 95–969, 95th Cong., 2d Sess. 2 (1978), *reprinted in* House Comm. on Post Office and Civil Service, 96th Cong. 1st Sess., *Legislative History of the Civil Service Reform Act of*

---

**2.** We do not need to consider the exceptions discussed by the Board in *Gende,* as they are not involved in the case before us. Such exceptions will have to be decided on a case by case basis as they arise.

*1978*, at 1466 (Comm. Print No. 96–2, 1979) (herein referred to as *Legislative History*). In amending Chapter 43, Congress conferred certain benefits on both employees and agencies. Employees could no longer be removed or demoted under *ad hoc* rules of agencies. Any removal against them had to be based on the results of § 4302 appraisal systems. Furthermore, that Section and § 4303 provide that any employee whose reduction or removal is proposed must be given 30 days' notice which identifies the instances of unacceptable performance complained of, a reasonable time to reply, and an *opportunity for improvement*. These provisions indicate that Chapter 43 was intended by Congress to be the exclusive remedy to remove an employee for unacceptable performance. This conclusion is strengthened by the following statement on page 39 of the *Senate Report*, U.S.Code Cong. & Admin.News 1978, p. 2761:

The purpose of section 203 is to provide for new systems of appraising employee work performance. The principal changes it makes in Chapter 43 of title 5, United States Code are the following:

-Abolishment of present requirements of summary adjective ratings and appeals for performance ratings;

-Establishment of revised performance appraisal system to be used as a basis for developing, rewarding, reassigning, demoting, promoting, retaining, and removing employees; and

-Establishment of new procedures for taking action based on unacceptable performance.

The benefit conferred on agencies by the Act was the provision that they would be required to prove their charges against employees by the lesser standard of substantial evidence instead of the more exacting standard of preponderance of the evidence. 5 U.S.C. § 7701(c)(1) provides that "in the case of an action based on *unacceptable performance* described in section 4303 of this title" the agency action shall be sustained only if "supported by substantial evidence" and shall be sustained "in any

other case" if supported by a "preponderance of the evidence."

Also, as stated above, § 7512(D), which is a part of Chapter 75, provides that it does not apply to "a reduction in grade or removal under Section 4303 [Chapter 43] of this title." *See Schwartz v. Dept. of Transportation*, 714 F.2d 1581, 1583 n. 5 (Fed.Cir.1983), which holds:

[T]he provisions of Chapter 75 are inapplicable to reductions in grade or removals for unacceptable performance under 5 U.S.C. § 4303. *See* 5 U.S.C. § 7512(D) (1982).

This holding of our court is squarely on the issue involved in the instant case. The decision in that case is a precedent that is binding on us with respect to any decision we make on the same issue. However, the majority opinion does not follow it, does not even mention it, and holds directly contrary to it. This failure of the majority opinion to follow a prior decision of this court is unprecedented and contrary to the procedures and practices of this court. The majority opinion makes no attempt to overrule the *Schwartz* decision, and it could hardly do so, because *Schwartz* holds exactly what the statute says.

The above provisions of the statute, plus the legislative history of the Act, are convincing proof of the intention of Congress to make Chapter 43 the exclusive procedure in performance-based cases.

The MSPB has intervened in this case and urges us to uphold its decision in *Gende* and to hold that Chapter 43 is the exclusive procedure for performance-based actions filed after October 1, 1981. The Board also requests that the instant case be remanded to it for further consideration. The majority opinion acknowledges the fact that the Board has intervened and notes its requests, but fails to give them any favorable consideration. The MSPB is an important part of our government and has considerable expertise in this area. It is trying to conscientiously administer Chapters 75 and 43 as written and as intended by Congress and is to be commended for these efforts. This court should give deference

to its opinion and its application of the statute and allow it to reconsider the instant case in light of its decision in *Gende*. This is especially true in view of the fact that there are a number of other cases pending before the Board that involve the same Chapter 43 and Chapter 75 issue that is involved here.

I would hold that Chapter 43 is the exclusive procedure for agency performance-based actions against employees filed after October 1, 1981, and that Chapter 75 cannot be used in such cases. Also, I would vacate the decision below and grant the request of the Board and remand the case to it for reconsideration consistent with this opinion.[3]

NEWMAN, Circuit Judge (with whom KASHIWA and BENNETT, Circuit Judges, and MILLER, Senior Circuit Judge, join), dissenting.

I respectfully dissent from the court's decision, and for the reason given I write separately.

This decision turns solely on determination of the intent of Congress. Did Congress intend, when it stated:

Actions based on unacceptable performance are governed by Chapter 43 ...[1]

to mean that actions based on unacceptable performance are governed by either Chapter 43 or Chapter 75, at the option of the agency?

The Civil Service Reform Act of 1978 included implementing amendments to both Chapter 43 and Chapter 75:

§ 4303(a): Subject to the provisions of this section, an agency may reduce in grade or remove an employee for unacceptable performance.

§ 7512(D): [Chapter 75] does not apply to ... a reduction in grade or removal under [Chapter 43].

Ignoring this mandate, the court has concluded that clearer statutory language could have been used, and therefore that § 7512 must be ignored, and Chapter 75 remains inviolate. I cannot agree.

The asserted lack of clarity in the statutory language has only appeared in retrospect. The straightforward intention of the 1978 Act was blighted by delays in implementation of the performance standards required by Chapter 43, and by the appearance of loopholes, uncertainties, and gaps between the scopes of Chapters 43 and 75. The MSPB undertook to solve these problems, first by *Wells v. Harris*, 1 MSPB 199, 1 M.S.P.R. 208 (1979), which delayed the switch from Chapter 75 to Chapter 43 procedures until performance standards were in place, and then by *Gende v. Department of Justice*, 23 M.S.P.R. 604 (1984).

I agree with the analysis and conclusion of Judge Skelton's dissenting opinion, that this case must be remanded because Chapter 43 is the exclusive procedure for performance-based actions. That analysis is logical, it is simple, and it comports with the text of the Act and with the legislative history, which states:

[N]o employee will be disciplined when performance standards and critical elements have not been adequately defined by an agency.

H.R.Rep. No. 1403, 95th Cong., 2d Sess. 21 (1978). In this I agree also with the analysis in *Gende* of the purposes and interpretation of the 1978 Act.

I write separately to emphasize my concern about the prospective "interstitial legislation"—to quote from the MSPB's brief in this appeal—that is set forth in *Gende*. That portion of *Gende* relates to issues not before the MSPB or this court, is of the nature of dicta, and presents issues that are not ripe for adjudication.

Changes in law and practice contrary to clear congressional intent, even when necessary to remedy perceived problems in the

---

**3.** I do not reach the merits, because no decision thereon can be made until the issue of the proper application of Chapter 43 and Chapter 75 has been resolved.

**1.** S.Rep. No. 969, 95th Cong., 2d Sess. 46, *reprinted in* 1978 U.S.Code Cong. & Ad.News 2723, 2768.

statutory scheme, require the attention of Congress and not that of the executive branch or the judiciary.