NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**LYNN NOVITSKY,**
*Petitioner,*

v.

**DEPARTMENT OF JUSTICE,**
*Respondent.*

---

2011-3023

---

Petition for review an arbitrator's decision in FMCS Case No. 09-53595 by Charles H. Pernal, Jr.

---

Decided: June 28, 2011

---

LYNN NOVITSKY, Summerfield, Florida, pro se.

AUSTIN M. FULK, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and BRIAN M. SIMKIN, Assistant Director.

---

Before LOURIE, GAJARSA, and DYK, *Circuit Judges*.

PER CURIAM.


Lynn Novitsky petitions for review of the arbitrator's decision upholding her removal from employment by the Department of Justice, United States Marshal Service ("USMS" or "the Agency"). Because substantial evidence supports the arbitrator's decision and there were no errors of law, we *affirm*.

## BACKGROUND

Novitsky was employed as an administrative support assistant—criminal clerk in the USMS District of Colorado office in Denver, Colorado. Novitsky's job involved entering and maintaining data relating to the movement of prisoners in the custody of the USMS in a computer program known as the Prisoner Tracking System ("PTS"). After the Agency hired her in April 2007, Novitsky attended a two-day training session at the Federal Law Enforcement Training Center in Brunswick, Georgia, on how to use the PTS. Novitsky also received an additional week and a half of on-site PTS training. Despite the training, Novitsky had difficulty performing her job without the assistance of other employees. In August 2007, Novitsky received additional training on how to use the PTS. In her performance review in November 2007, Novitsky received a successful rating, with the caveat that her work performance, including the accuracy of her entries into the PTS, was expected to improve.

On February 6, 2008, the Agency issued a Notice of Unacceptable Performance ("NUP"), informing Novitsky that her performance had fallen to unacceptable levels in, *inter alia*, Critical Elements #5, Application of Technical

Knowledge & Skills in Workplace Products or Services. A4. The NUP stated that Novitsky had failed to demonstrate an ability to accurately enter data into the PTS and listed twelve errors she had made between November 9, 2007, and January 11, 2008. A4-6. The NUP also established a Performance Improvement Plan ("PIP"), which required that she make no more than three errors in entering data into the PTS within the next 90 days. A6. To aid Novitsky in bringing her performance up to acceptable levels, Novitsky attended weekly PIP meetings with her supervisors. She was also offered the opportunity for additional PTS training, as well as training in time management and organizational skills, which she declined.

On May 30, 2008, the Agency issued a memorandum that informed Novitsky that her performance remained unacceptable. The memo indicated that she had made a total of fifteen errors in Critical Element #5 since receiving the NUP. Despite her continued unacceptable performance, the Agency gave Novitsky an additional 60 days to show improvement. The PIP, as extended, required Novitsky to make no more than two errors during the 60-day extension. A7.

Again Novitsky failed to meet the performance level specified in the PIP, as extended. Accordingly, on September 24, 2008, the Agency issued a notice of Proposed Removal. The Proposed Removal outlined sixteen errors made by Novitsky, eight during the original PIP period and eight during the extended PIP period. A7-10. The agency alleges that some of Novitsky's errors resulted in an inmate being held for over 61 days without a judicial hearing, having another inmate moved from one jail to another for no reason, and having several inmates incorrectly listed as being released. Novitsky also allegedly

caused a $31,900 deficiency in funding for a local jail to house prisoners. The Agency did not consider any of these errors to be *de minimis*. On December 8, 2008, the Agency issued a final decision removing Novitsky from federal service, effective December 20, 2008.

Novitsky's union filed a grievance on December 15, 2008. Arbitration hearings were held on March 24-25, April 15-16, and May 20-21, 2009. The union argued, *inter alia*, that the PIP's requirement that Novitsky make no more than one error per month was "an unrealistic standard for someone performing data entry." A62.

On October 6, 2010, the arbitrator affirmed the USMS's removal decision. The arbitrator concluded that all the requirements for removal from federal service had been established: (1) the Office of Personnel Management ("OPM") had approved the Agency's performance appraisal system, (2) the Agency had communicated its performance standards to Novitsky, (3) the performance standards were reasonable, (4) the Agency had informed Novitsky that her performance was not acceptable, and (5) Novitsky's performance was unacceptable in at least one critical element. A66-67.

Regarding the reasonableness of the Agency's performance standards, the arbitrator acknowledged that "[a]ll Agency representatives and witnesses testified that a one-error per month standard made no sense." A72. Nevertheless, the arbitrator concluded that this was due to the union's formulation of the standard as one error per month when it was, in reality, three errors over three months. *Id.* The arbitrator also determined that, although the NUP, Proposed Removal, and certain testimony suggested a mechanistic approach to counting

errors, the errors in fact had to be "sufficiently substantial" to count toward the sanction of removal. *Id.*

Regarding Novitsky's performance, the arbitrator reviewed each of the sixteen errors listed on the Proposed Removal and determined that there was substantial evidence of nine errors (three out of the eight errors for the initial PIP period and six out of the eight errors for the extended PIP period). A73-85. Accordingly, the arbitrator concluded that Novitsky's performance fell below the requirements of the PIP, rendering her performance unacceptable as to Critical Element #5. *See* A67, 85.

Novitsky timely appealed to this court. We have jurisdiction pursuant to 5 U.S.C. § 7121(f) and 5 U.S.C. § 7703(b)(1).

DISCUSSION

This court applies the same standard to an arbitrator's decision as it does to a decision of the Merit System Protection Board ("the Board"). *Martin v. Dep't of Veterans Affairs*, 412 F.3d 1258, 1263-64 (Fed. Cir. 2005). The scope of judicial review of a decision of the Board is narrowly defined and limited by statute. We must affirm the Board's decision unless we find it to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *Kewley v. Dep't of Health & Human Servs.*, 153 F.3d 1357, 1361 (Fed. Cir. 1998).

Novitsky's primary argument is that a one error per month standard is unreasonable, and that the arbitrator's

application of this standard was arbitrary and capricious. If the nature of the error standard were based solely on the quantity of errors, it might well be that the standard would have been unreasonably strict. However, the arbitrator here clearly construed the word "error" to mean "sufficiently substantial" errors. J.A. 72. In finding that Novitsky could be "removed from service for committing three errors over 90 days," the arbitrator "assum[ed] [that] the errors at issue were sufficiently substantial." *Id.* The arbitrator did not err in interpreting the standard to require a finding that the error be substantial, nor did he err in finding that many of Novitsky's errors were, in fact, quite significant and resulted in the mishandling of prisoners and a substantial financial loss to the agency. With respect to each error, the arbitrator made a specific determination that the error was substantial enough to justify removal, finding that nine of the errors were substantial and seven were not. The arbitrator did not err in finding that there were sufficient grounds to discharge the petitioner.

Novitsky also argues that the arbitrator failed to consider that the Agency removed her based on a locally developed, subjective performance standard that was not approved by OPM. We disagree. Although under 5 U.S.C. § 4304 OPM must review each agency's performance appraisal system, "such approval does not involve OPM review of the performance elements and standards established for each position." *Lovshin v. Dep't of Navy*, 767 F.2d 826, 833 n.6 (Fed. Cir. 1985). In this case, the arbitrator determined that the Agency had shown OPM approval of its performance appraisal system, A66; the Agency was not required to show OPM approval of the Agency's specific PIP standards, *Lovshin*, 767 F.2d at 833 n.6.

Novitsky also argues that the arbitrator failed to consider several facts, including that she was assigned additional duties during the PIP period and that her performance review initially reflected satisfactory performance.    Regarding the former, the arbitrator did consider Novitsky's argument that she had been assigned additional duties during the PIP, but concluded based on the testimony of the Agency's witnesses that any extra work was, in essence, just the normal ebb and flow of the workload of a criminal clerk.  A72-73.  We see no error in that finding.    Regarding Novitsky's initial satisfactory performance, the NUP states that the initial satisfactory rating was given with the understanding that her performance would improve.  A4.  When it did not, Novitsky was put on a PIP.

We have considered Novitsky's other arguments and find them unpersuasive.  Accordingly the decision of the arbitrator upholding the Agency's removal decision is *affirmed*.

## AFFIRMED

### COSTS

No costs.